# VAN BUSKIRK v. RED BUTTES LAND AND LIVE STOCK COMPANY.

(No. 821; Decided May 1st, 1916; 156 Pac. 1122.)
(Rehearing denied October 23rd, 1916.)

Appeal and Error — Scope of Review Without Record of. Evidence— Instructions— Pleading—Construction of Pleading— Objection to Pleading First Made on Appeal.—Water Appropriations—Adjudications by State Board of Control—Statutory Remedies for Violation of Rights—Exclusive Remedy— Cumulative Remedies—Actions—Jurisdiction of Courts—Natural Streams—Irrigation—Water Courses.

1. Where the trial court certifies a bill of exceptions showing that a verdict was directed on the ground that plaintiff had not invoked his proper remedy, the instruction may be reviewed although the evidence is not brought up, under the rule allowing review of instructions with the evidence where it is claimed that the instruction would be erroneous under any conceivable state of facts which might be proved under the issues made.

2. Where insufficiency of a pleading is first asserted on appeal it must be construed liberally and supported by every legal intendment and upheld if the necessary facts are fairly to be inferred from the allegations.

3. The remedy provided by Compiled· Statutes, 1910, Section 801, for the regulation of headgates and reservoirs and the distribution of· water by commissioners among users entitled thereto in accordance with existing decrees, is cumulative and not exclusive, and does not preclude a recovery for damage suffered, nor relief by injunction, since injunction suits are provided for by Compiled Statutes, 1910, Section 4900.

4. Subject to the general principle that whether or not a statutory remedy is exclusive. or merely cumulative, depends upon the legislative intent as shown by the terms of the statute when judicially construed, and the rules for determining the question are, briefly stated, as follows:

(a). If a new constitutional right is given with a prescribed remedy, and the remedy is adequate, or, as held in some cases, even if inadequate, such remedy is exclusive.

(b) Where, for a pre-existing right, a new remedy is provided, then such statutory remedy is ordinarily to be regarded as merely cumulative, and is to be so held unless

the former remedies are abrogated, either express or by necessary implication.

5. Since at common law there was a right of action for wrongful interference with a water right to the owner's damage, a further remedy to invoke distribution of water through the agency of water commissioners is cumulative only.

ERROR to District Court, Albany County; HON. V. J. TIDBALL, Judge.

Action by James P. Van Buskirk against the Red Buttes Land and Live Stock Company. Judgment for defendant and plaintiff brings error. The facts are stated in the opinion.

*Cassius M. Eby,* for plaintiff in error.

The rights of the parties have been adjudicated by the Board of Control, a fact admitted by the pleadings. Defendant in error has violated the rights of plaintiff, as fixed by said adjudication; the trial court erred in giving instructions Nos. 1 and 2 which in substance informed the jury that plaintiff having failed to call upon the water commissioner to distribute the water before bringing suit is without right to maintain this action and the jury was directed to return a verdict for defendant. Water commissioners exercise police authority; the water commissioner law does not deprive appropriators of the right to seek their proper remedies in the courts. (Farm Investment Company v. Carpenter, 9 Wyo. 128.) The point was raised and decided in the case of Stoner v. Mau, 11 Wyo. 397-400, and in the case of Ryan v. Tutty, 13 Wyo. 129-130. Where it was contended that failure to appeal from a ruling made by a water commissioner in distributing water among appropriators, cut off the right to proceed in the courts, which doctrine was rejected by this court. The same rule has been established in Colorado. (Boulder Ditch Co. v. Hoover, 48 Colo. 343, 110 Pac. 77, a case cited by approval by this court. Parshall v. Cowper, 143 Pac. 362. See also Vol. 2 Wiel on Water Rights, Secs. 1192-1194.) Under a similar statute the Ne-

braska court held that commissioners have no right to adjudicate rights, but to merely exercise police power in distribution. (Crawford v. Hathaway, 67 Neb. 325, 93 N. W. 781.) The doctrine has the support of the Supreme Court of the United States. (Montezuma Canal Co. v. Smithville Canal Co., 218 U. S. 385-6, 54 L. Ed. 1079-80.) Judicial power is vested in the courts. (Bondy Sep. Gov. Pow. 31; State v. City, 14 Ill. 420; Kilbourn v. Thompson, 103 U. S. 188, 26 L. Ed. 378.) The instructions are erroneous under any conceivable facts proven under the issues. (Downing v. State, 10 Wyo. 373.)

*Corthell, McCullough & Corthell,* for defendant in error.

If the instructions would be correct under any evidence that might be admitted under the issues, the appeal must fail as the proceedings in error are predicated entirely upon instructions numbered 1 and 2. (Wallace v. Skinner, 15 Wyo. 233-251; Downing v. State, 10 Wyo. 373; Chosen Friends v. Otterson, et al., 7 Wyo. 89, 209 Fed. 31, 219 Fed. 547.) It is necessary that the bill show the materiality of the charge complained of and not merely that it was wrong as an abstract proposition. (Jones v. Buckell, 104 U. S. 554.) The record does not present the errors complained of in a form sufficient to justify a reversal. It will be observed that there is no allegation that there is a sufficient supply of water in the streams involved to satisfy appropriations of the defendant which are admitted prior to those of plaintiff, hence, it is not shown that there was water at any time to which plaintiff was entitled to take. It is not shown that defendant took water which plaintiff was entitled to take. In this view of the case any errors which may have occurred would become immaterial. (Pardee v. Kuster, et al., 15 Wyo. 368; Collins v. Twin Falls Co., 152 Pac. 203.) The Board of Control is vested with very broad powers in the supervision of waters and their appropriation, distribution and diversion. (Const. Art. 8, Sec. 1, et seq.) Adjudications by the Board are conclusive. (Comp. Stats. 1910, Sec. 793. Parshall v. Cowper, 302.) Water commissioners are

authorized to regulate the use of water and an appeal lies from the commissioners' action, (Secs. 801, 802 and 805, Comp. Stats. 1910), and penalties are imposed for interference with commissioners acting in discharge of their duties. Administrative officers execute the judgment of the Board of Control. (Parshall v. Cowper, supra.) Supervision by commissioners has been provided in the interest of economy and prompt action. (Ryan v. Tutty, 13 Wyo. 129-130; Hamp. v. State, 19 Wyo. 377; McLean v. Canal Co., 98 Pac. 20.) It was the intention to restrict the authority of the courts in these matters after the question had been adjudicated by the Board. (Farm Investment Co. v. Carpenter, 9 Wyo. 140-145.) In Montezuma Canal Co. v. Canal Co., 218 U. S. 385, the Supreme Court of Arizona held that the appointment of a water commissioner trenched upon the legislative power to provide administrative machinery, etc., and in reversing the decision the United States Supreme Court held that the matter was one within the legislative power, but upheld the decree of the trial court on the ground that the legislature had failed to act. Counsel for plaintiff has misinterpreted the scope of the above decision. The case of Stoner v. Mau involved partnership rights in the ditch, but not in the water of the stream and hence is not in point, as it was there held that the statutory remedy did not apply to the facts of the case, nor afford relief to which the complaining party was entitled. Courts are not permitted to interfere with rulings of the Interstate Commerce Commission, a body similar to our State Water Board. (Texas Railroad Co. v. Oil Co., 204 U. S. 426-435-448; U. S. v. Nav. Co., 228 U. S. 87, 106; Mitchell Coke & Coal Co. v. Pa. R. R. Co., 230 U. S. 247, 249; Baltimore R. R. Co. v. U. S., 215 U. S. 481; Tex. & Pac. R. R. Co. v. Lumber Co., 234 U. S. 138, 146; Simpson v. Shepard, 230 U. S. 352.) Other illustrations are found in cases under the Federal Hours of Service Law, (N. P. R. R. Co. v. State, 222 U. S. 370), and the Federal Employers' Liability Act, (Mondu v. Railroad Co., 223 U. S. 1; Hendrick v. Mary-

land U. S. S. C. Adv. Op. Feb. 1, 1915, Pg. 140. See also
Young v. Kansas City, &c. R. R. Co., 33 Mo. App. 509, and
State v. Railroad Co., 136 Ga. 619.) The principle was ap-
plied in Wisconsin under a statute empowering the county
board to change town boundaries and to apportion indebted-
ness, etc. (Town v. Town, 137 Wis. 281.) It has been
observed with respect to state land boards in Wyoming;
(Cooper v. McCormick, 10 Wyo. 379, 410; Baker v. Brown,
12 Wyo. 198, 205); also to rulings of the Board of Custom
Appraisers. (U. S. v. American Express Co., 177 Fed.
735.) Statutory remedies for violations of copyright held
to be exclusive; (Globe Co. v. Walker, 210 U. S. 366, 367),
and as to drainage district; (Smittle v. Haag, 140 Ia. 492),
as to a case under the Workmen's Compensation Law;
(State v. Clausen, 117 Pac. 1101, 1118.) In Parshall v.
Cowper (Wyo.) 143 Pac. 302, this court indicated that wa-
ter commissioners are not subject to control by the courts
when acting within administrative discretion. The petition
did not state facts sufficient to constitute a cause of action
at common law.

   *Cassius M. Eby,* in reply.

   The allegations of pleadings should be liberally construed.
(Comp. Stats. 1910, Sec. 4416. Pomeroy's Remedies, Sec-
tion 549.) In Pardee v. Kuster, 15 Wyo. 369, cited by
counsel an exception to the pleading had been taken in the
court below; the point involved there was not a defective
statement of cause of action, but a showing of no cause of
action. Failure to demur or move for a more specific state-
ment waives the defect. (Anderson v. Thompson, 88 Ind.
405; Farmers' Bank v. Orr, 25 Ind. App. 71.) There is no
presumption that the instructions were given on evidence.
(Willis v. Fire Co., 137 Pac. 761; Garver v. Garver, 121
Pac. 165; McDonald v. Challis, 128 Pac. 570; Downing v.
State, 11 Wyo. 86; Clausen v. State, 21 Wyo. 505.) The
commissioners' duties are merely administrative; the analo-
gy attempted as between the functions of a sheriff and a
water commissioner is without merit. The case of Ryan v.

Tutty cited by counsel does not apply to the facts in the present case. The case of Tex. Pac. v. Oil Company, 204 U. S 426, in no way sustains the contention that courts have no authority to entertain an action for alleged violations of an adjudicated right. L. & N. R. Co. v. Cook Brewing Co., 223 U. S. 71, is against the contentions of plaintiff in error, as is also Danciger, et al. v. Wells, Fargo & Co., 154 Fed. 379. The Washington Compensation Law takes away the power of the courts and supplies an exclusive remedy. The right to litigate matters in a court before a jury cannot be lightly taken away. (Cooley Const. Limitation, Sec. 410.)

POTTER, CHIEF JUSTICE.

This action was brought in the district court by the plaintiff in error, James P. Van Buskirk, against The Red Buttes Land and Live Stock Company, a corporation, defendant in error, for the recovery of damages for the alleged wrongful diversion of the waters of Five Mile Creek and Willow Creek, in Albany county in this state, during the years 1910, 1911 and 1912, to the injury of the plaintiff as an appropriator thereof for irrigation purposes, and also for an injunction to restrain the alleged wrongful diversion in the future. The petition contains three causes of action for damages for the alleged wrongful diversion during the years aforesaid respectively, and a fourth cause of action for an injunction. The cause was tried to a jury upon the first three causes of action resulting in a verdict for the defendant under the instructions of the court, and a judgment was thereupon rendered in the action that the plaintiff take nothing and that the defendant recover its costs.

It is admitted by the pleadings that the plaintiff and defendant are respectively appropriators of water from Five Mile Creek, and the petition alleges that the plaintiff's appropriation also includes the waters of Willow Creek, a tributary of Five Mile Creek and uniting with it about two miles above the point where the latter reaches the lands of the plaintiff; but the answer denies that Willow Creek is either a tributary of, or unites with, Five Mile Creek. It is also

admitted by the pleadings that the priorities of right to the use of the waters of said streams were adjudicated and determined by an adjudication and decree of the State Board of Control made and entered on September 21, 1903, including the rights and priorities of the plaintiff and defendant respectively, and that the lands of the defendant are situated on said streams above the lands of the plaintiff. It appears also from the pleadings that by said adjudication the defendant was awarded certain rights prior and superior to those of the plaintiff, and other rights or priorities subordinate to those of the plaintiff.

The petition alleges in substance as to the wrongful diversion that until the year 1910 the plaintiff had generally received and obtained sufficient water to irrigate his lands, but since and including that date (the petition having been filed on July 30, 1912) the defendant had diverted the waters of said streams to lands owned and controlled by it and to lands of other persons, by means of numerous dams and ditches for which it had no right or appropriation, thereby collecting and impounding all the waters of said streams to the great damage, injury and detriment of the plaintiff, and thereby and by other means deprived the plaintiff of his share and appropriations of the waters of said streams, and has thereby permitted and caused the waters of said streams to be wasted; that said streams run and contain sufficient water during all irrigation seasons to abundantly supply water for the irrigation of the lands of the plaintiff; that by defendant's said acts it has unlawfully and maliciously deprived the plaintiff of said water, water rights and appropriations during all of said years, and with full knowledge of his prior rights to the water of said streams. The answer denies these allegations, except that it admits that defendant has diverted the waters of Five Mile and Willow creeks where they flow into and upon the lands of the defendant to an extent much less than the respective amounts of the awards in the first priorities of the defendant, and has applied such waters to beneficial use for the irrigation and cultivation of the lands

underlying the dams and ditches for which such priorities were established.

On the trial aforesaid, at the conclusion of the evidence the court instructed the jury at the request of the defendant and over the objection of the plaintiff as follows:

"Instruction No. 1. Five Mile and Willow creeks being adjudicated streams and the respective water rights of the plaintiff and defendant having been established and determined, the sole remedy to prevent unlawful or wrongful diversion or deprivation of water was to call upon the Water Commissioner to regulate the flow and divide the water of the streams in accordance with such adjudication. The plaintiff, having omitted to invoke this remedy or to apply to the Water Commissioner to regulate such distribution, cannot recover from the defendant in this action. You should therefore return a verdict for the defendant."

"Instruction No. 2. The jury is instructed to return into court a verdict in favor of the defendant."

These were all the instructions given to the jury, the court having refused all that were requested by the plaintiff, and the instructions so given were each excepted to by the plaintiff at the time.

1. The evidence is not brought into the record. But the case is brought here without the evidence on the theory that the proposition contained in the first instruction is erroneous upon any conceivable state of facts that might have been proven in the case, and that the second instruction was not given independently of the first or on other grounds; but as a part of the instruction contained in the first and to make it effective, or, in other words, to direct the result in accordance with the first instruction and for the reasons therein stated. And the bill of exceptions, in effect, states that to have been the purpose of the second instruction; it recites that such instruction was given as a part of the action and instruction of the court in giving instruction number one, and in the certificate of the trial judge allowing the bill it is further recited that instruction num-

bered two was based upon instruction numbered one, as in the bill set forth. Conceding that an instruction directing a verdict as in the form of the second instruction, standing alone, could not be considered on error without the evidence in the case, the trial court having certified in allowing the bill that the instruction was based upon another instruction stating that for certain reasons therein explained a verdict should be returned for the defendant, we think it must be considered as in effect a part of that other instruction to enforce by positive direction the contemplated or intended result thereof. The first instruction, while stating that the plaintiff was not entitled to recover and advising that a verdict be returned for the defendant, did not in so many words direct the return of such a verdict; though it may be conceded that it required such a verdict and would be violated if a verdict other than for the defendant should be returned. But the court no doubt deemed it better to couple the advice of the first instruction with the positive direction of the second, as these instructions had been framed and requested by counsel for defendant. Having thus certified in allowing the bill and in the certificates of allowance as to the ground upon which the second instruction directing a verdict was based, the possibility that it might have been given upon other grounds or for other reasons is of course negatived by the record; thus bringing the case, we think, within the rule allowing the review of instructions without the evidence where it is claimed that they would be erroneous under any conceivable state of facts that might be proven under the issues in the case. (3 Cyc. 169-170; Downing v. State, 10 Wyo. 373, 69 Pac. 264.) But a consideration of the instructions is limited to determining whether they would be correct under any evidence that might properly have been admitted.

2. It is contended by counsel for defendant in error that it is immaterial whether the instructions were or were not erroneous, for the reason that the petition is insufficient to support a judgment in favor of the plaintiff. This objection

to the petition is made for the first time in this court, and therefore the pleading must be construed liberally and supported by every legal intendment, and upheld if the necessary facts are fairly to be inferred from the allegations. (Grover Irr. Co. v. Lovella Ditch Co., 21 Wyo. 204, 230, 131 Pac. 43, Ann. Cas. 1915D. 1207.) It is argued that the petition is insufficient for failure to allege that the defendant diverted more water than it was entitled to under its preferred priorities, and that during the irrigation season during the years in question there was a sufficient supply of water in the streams to satisfy the admitted prior appropriations of the defendant, so as to leave at any time a supply of water in said streams which the plaintiff would be legally entitled to use. In addition to the averments of the petition above stated, it alleges the priorities allowed by the decree of the Board of Control to the plaintiff and defendant respectively, and also the capacity of said streams, which we think must be understood as referring to the quantity of water ordinarily flowing therein, thereby showing that the water of the streams is much greater in amount than defendant's senior priorities. It is further alleged that the defendant had abandoned many of the appropriations awarded to it by said decree, and that during the years aforesaid the defendant had caused and permitted all the waters of said streams to be backed up in dams, pools and depressions of ground on its own premises and the premises of others under its control, and thereby caused said waters to be wasted and deprived the plaintiff of his share and appropriations thereof. At least as against the objection made for the first time on this appeal we think the petition contains sufficient averments to state a good cause of action.

3. We are unable to agree with the contention that the first instruction contains a correct statement of the law. The statute creating the office of water commissioner and prescribing the duties thereof does not expressly abrogate any of the common law remedies of one who has been wrongfully deprived of the use of water to which he is

entitled, nor can we find anything therein to justify a holding that the right to resort to such remedies is taken away by implication. In Farm Investment Co. v. Carpenter, 9 Wyo. 110, 61 Pac. 258, 50 L. R. A. 747, 87 Am. St. Rep. 918, when considering that part of the statute regulating water rights which provides for an adjudication of priorities by the State Board of Control, upon the contention that the act was unconstitutional for the reason that it confers judicial power upon the Board in violation of the provisions of the Constitution dividing the state government into three distinct departments and vesting the judicial power in certain specified courts, this court said:

"The statute nowhere attempts to divest the courts of any jurisdiction granted to them by the constitution to·redress grievances and afford relief at law or in equity under the ordinary and well-known rules of procedure." And further: "The jurisdiction of equity to entertain suits for quieting title to the use of water is well settled. The Legislature has not attempted.to divest the courts of that jurisdiction, and we do not think it could successfully do so. Although in the statutory proceeding for the determination of water rights, the courts obtain jurisdiction only by way of appeal from the decisions of the Board of Control,·all the ordinary remedies known to the law pertinent to the use and appropriation of water, are open to all interested in such rights, equally with all other persons in respect to any other kind of right or property. The courts possess ample jurisdiction to redress grievances growing out of conflicting interests in the use of the public waters, and to afford appropriate relief in such cases. * * * * The jurisdiction of the courts remains as ample and complete after, as well as before, an adjudication by the board. But the principle applies here as in other cases, that a party may not re-litigate a question which has passed into final adjudication. And the courts will not assume in an independent action, to determine anew the rights of parties, which, as between themselves, have been settled by the decree of the

Board of Control; at least in the absence of fraud, or a showing of facts sufficient to vitiate a judgment."

The provisions relating to the appointment and duties of water commissioners have been stated and considered by this court in several cases. (Ryan v. Tutty, 13 Wyo. 122, 78 Pac. 661; Hamp v. State, 19 Wyo. 337, 118 Pac. 653; Parshall, State Engineer, v. Cowper, 22 Wyo. 385, 143 Pac. 302.)   Ryan v. Tutty was an action brought to restrain the defendant from interfering with plaintiff's prior appropriation by diverting the water of certain springs, and the principal question was whether the water of said springs, which had been diverted by the defendant, naturally flowed into the stream from which plaintiff's appropriation was made and down to the headgate of his ditch, so as to compose part of the waters appropriated by him.   The priorities upon the stream had been adjudicated by the State Board and it appeared that the plaintiff had invoked the services of the water commissioner to distribute the water of the stream. He offered but was not permitted to show that the commissioner and his superior officer, the superintendent of the water division, had decided that the plaintiff was entitled under his appropriation to the water of the springs as a tributary of the stream.   And it was contended on behalf of the plaintiff in this court that the decision of the commissioner and superintendent was binding upon the defendant until reversed on appeal under the statute providing for an appeal to the state engineer.   In disposing of that contention we said:

"In our opinion, the testimony was properly excluded. * * * * No doubt it became incumbent upon the commissioner when his services were requested to satisfy himself on that question before acting.   But his decision, or a failure to take an appeal therefrom, did not cut off the right of the interested parties to contest the matter in some proper proceeding in the courts, nor divest the courts of their general jurisdiction in the premises.  * * * * They (water commissioners) are not vested with arbitrary control, but

are required to divide the water according to the prior rights of the interested parties. The duties imposed upon them in the matter now under consideration are executive; they are administrative agents; and, while in the performance of their duties the exercise of judicial discretion is necessary to a very limited degree, the power conferred is executive rather than judicial, and, although an appeal is allowed from their action and decision to higher authority, and even in the end to the courts, we find no design in the statute to render the remedy by appeal exclusive. * * * * Primarily, the commissioner is authorized, whenever legally called upon, and it is his duty, to see that the water of a particular stream is diverted in accordance with the established priorities, and to prevent anyone from taking more water than he is entitled to take to the injury of others. * * * * We perceive nothing in the statute, or in the nature of his duties, that renders a decision on his part in the premises a permanent adjudication of the matter, or that even prevents him from changing his decision when again called upon to perform similar duties should he conclude that he had previously acted erroneously. It is true that it is the duty of appropriators and others to respect his authority and orders, and that, for a violation thereof, an offender may be punished, under the statute, as for a misdemeanor. But that is no reason for holding his action and decision binding upon the courts when the point in controversy comes before them for determination in an appropriate action between the interested parties."

These and similar provisions in other states relating to the appointment and duties of water commissioners are upheld as a proper exercise of the police power of the state, and the effect thereof is often referred to by text writers and in the decisions as the policing of the public waters. Mr. Kinney states in his work on Irrigation that the duties of such officers "are, in fact, in the nature of water police, whose duties are to protect the rights of the lawful appropriators, and to arrest those who unlawfully infringe upon

their rights." (3 Kinney on Irrigation (2nd Ed.), Sec. 1345.) While the statute requires that the water commissioner shall begin his work upon written demand being made upon him therefor by one or more appropriators, as well as by direction of his superior officer, there is no provision declaring it to be the duty of an appropriator, in case of a wrongful diversion to his injury or other interference with his right, to demand a distribution of the waters by the commissioner. Whether a failure to call upon the commissioner for the performance of his duties might in any case be considered as evidence against an appropriator claiming to have been injured by an unlawful diversion, where there is a conflict in the testimony as to the fact or effect of such diversion, or in mitigation of the alleged wrongful act, is a question unnecessary to decide, and it has not been considered.

It is argued that the duty of the water commissioner to distribute the waters of a stream where the rights thereto have been adjudicated by the Board of Control is like that of a sheriff in executing the judgment of a court. But there is no proper ground for the comparison. The commissioner's authority is not the decree of the Board of Control adjudicating the priorities; the latter is merely the evidence of the various rights and priorities to the use of the water of the stream upon which the commissioner acts. The commissioner's authority is found in the statute, not to *enforce* any decree of the Board, but to regulate the distribution of the water in accordance with the appropriation and priorities as established by its decree in the statutory proceeding. As explained in Farm Investment Co. v. Carpenter, *supra,* the proceeding before the Board is not one where a claimant to water obtains redress for an injury, nor to result in the issuance of any writ or process known to the law to prevent the unlawful invasion of a party's rights or privileges; but the proceeding is inaugurated only by order of the Board, and its result is a settlement or adjustment of the several priorities of appropriation, to be

followed by the issuance of a certificate to each appropriator showing his relative standing among other claimants, and the amount of water to which he is entitled, as evidence of his title or right to the use of the water.

Notwithstanding that the office of water commissioner or water master is provided for in many of the western states where the acquirement of water rights for irrigation and other purposes by priority of appropriation is permitted, and that such provisions have been in force for many years in some of the states, it does not seem to have been held in any case that such provisions supply the only remedy for an unlawful diversion of water to the injury of an appropriator entitled to the use thereof or for any other wrongful interference with an appropriator's right to the use of water. On the contrary the cases are numerous in which the right to damages as well as an injunction has been sustained, apparently in the absence of any prior demand that the commissioner or other authorized officer shall regulate the distribution of the water. (3 Kinney on Irr. (2nd Ed.), Secs. 1596-1610, 1661-1662.)

The office of water commissioner with substantially the same duties now prescribed by our statute had been provided for in Colorado before the enactment of our law upon the subject; and an earlier statute of that state contained a provision like that formerly found in our statutes authorizing the occasional appointment of commissioners to apportion the water of any stream, when insufficient to supply the continual wants of the country through which it passes, "as they may in their judgment think best for the interest of all parties concerned, and with due regard to the legal rights of all." (Colo. Gen. Laws, 1877, Sec. 1375, p. 515; Wyo. Comp. Laws, 1876, p. 377, Sec. 4.) Yet it was early held in Colorado that an action will lie for a wrongful diversion. (Yunker v. Nichols, 1 Colo. 551 (1872) ; Schilling v. Rominger, 4 Colo. 100 (1878) ; Crisman v. Heiderer, 5 Colo. 589 (1881). And in many cases since the later statute was enacted providing for water com-

missioners. (Medano Ditch Co. v. Adams, 29 Colo. 317, 68 Pac. 431; Buckers Irr. M. & I. Co. v. Farmers' Ind. Ditch Co., 31 Colo. 62, 72 Pac. 49; Kerr v. Burns, 42 Colo. 285, 93 Pac. 1120; Kern Res. & Ditch Co. v. Weldon Valley Ditch Co., 57 Colo. 302, 141 Pac. 1196.)

In Stoner v. Mau, 11 Wyo. 366, 399-400, 72 Pac. 193, a case quite parallel to this in principle, it was held that the statutory provisions for the appointment of a distributer of the water of a partnership ditch, where the joint owners were unable to agree relative to the distribution of such water, were not intended as a substitute for an action for damages or an injunction, and we said with reference to that matter: "It (the statute) certainly provides no means whereby one who has suffered injury through the wrongful diversion of water by another may recover damages for that injury. And, although it may be true that by pursuing the remedy provided by the statute an injunction might be rendered unnecessary to prevent a continuance of the wrong and resulting injury, we cannot regard the statute as depriving the courts of their equitable jurisdiction in such cases. There is nothing in the statute referred to indicating that it was adopted as an exclusive remedy in cases of disagreement among joint ditch owners." The statute has since been repealed and water commissioners are now vested with authority to regulate the distribution of water among the various users under any partnership ditch or reservoir where the rights have been adjudicated, in accordance with existing decrees. (Comp. Stat. 1910, Sec. 801.) Like the statute considered in the case cited, the statute authorizing the water commissioner to take charge of the distribution of the water of a stream by direction of the division superintendent or on the demand of an appropriator does not in any way refer to the recovery of damages or provide any other redress for an injury caused by a wrongful diversion, nor are we able to find anything in the statute indicating an intention to take away the right to injunctive relief. On the contrary in a statute enacted in 1907 amending certain

sections of the statutes relating to water rights, including those prescribing the duties of water commissioners, and adding several new provisions, the right to such relief was recognized and the procedure regulated in some respects. It is thereby provided that in suits for injunction affecting the use of water from streams upon which the rights have been adjudicated, no restraining order shall be granted before hearing had after at least three days' notice served upon the defendants; that all suits for injunction involving the use of water from streams shall be heard, either in term time or vacation not later than fifteen days after issue joined; and that in no case shall an injunction or restraining order be issued or become operative until the party obtaining the same executes an undertaking to the defendants to secure to the party enjoined all actual damages he may sustain if it be finally decided that the injunction or restraining order ought not to have been granted. (Laws 1907, Ch. 86, Sec. 21; Comp. Stat. 1910, Sec. 4900.)

Subject to the general principle that whether or not a statutory remedy is exclusive or merely cumulative depends upon the legislative intent, as shown by the terms of the statute when judicially construed, the rules for determining the question are, briefly stated, as follows: 1. If a new substantial right is given with a prescribed remedy, and that remedy is adequate, or, as held in some cases, even if inadequate, such remedy is exclusive. 2. Where, for a pre-existing right a new remedy is provided, then such statutory remedy is ordinarily to be regarded as merely cumulative, and is to be so held unless the former remedies are abrogated either expressly or by necessary implication. (7 Ency. Pl. & Pr. 372-373; 1 Cyc. 706-710; 1 C. J. 988-991; 1 R. C. L. 323-324.) This case comes within the rule relating to a new remedy for a pre-existing right, for there can be no doubt that at common law, and under the code prescribing civil remedies, there would be a right of action for damages for a wrongful interference with a water right to the injury of the owner thereof, as well as for an injunction to restrain such interference. (40 Cyc. 609, 684, 729, 738.)

Counsel for defendant in error cite several cases in support of their contention that the jury were correctly instructed as to the effect of the statutory provisions aforesaid relating to the duties of water commissioners, including cases decided by the Supreme Court of the United States under the Interstate Commerce Act, among others the case of Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075. But we do not think they are in point, except as to their statements of general principles with reference to the exclusive or cumulative effect of statutory remedies. A case which we think more in point, if not entirely so, is Atkinson v. Virginia Oil & Gas Co., 72 W. Va. 707, 79 S. E. 647, 48 L. R. A. (N. S.) 167. That was an action for the recovery of damages for the failure of the defendant to plug an oil well upon abandoning the same, to the injury of the plaintiff as the lessee of an adjoining tract of land, resulting in destroying the flow of gas into the plaintiff's well. The statute made it the duty of the owner of a gas or oil well, before abandoning or ceasing to operate it, to plug it in a prescribed manner, and in addition to prescribing a penalty for a non-compliance with its requirements, authorized a neighboring land owner or lessee to enter upon the land on which the abandoned well is located and plug the same and charge the owner thereof with the reasonable cost and expense of the work, and also to proceed by bill in equity to compel the owner to comply with the statute. It was contended that such remedies were intended to be exclusive and to take away the common law remedies. Referring to that contention the court said: "We are unable to concur in this view. As to a right of action for damages, the statute is silent. It fails to deal with that subject at all. Failing to cover this feature of the subject matter, it lacks comprehensiveness, one of the essentials of the application of the rule of construction invoked (citing cases). Failure on the part of the adjacent owner to avail himself of the statutory remedies may be a mitigating circumstance, but as to this we express no opinion."

A statute of New Hampshire provided that if any railroad company shall neglect to keep a sufficient and lawful fence on each side of its road, any person against whose land such fence is insufficient, may notify the agent of such corporation thereof, and if such fence shall not be made sufficient within twenty days after such notice, the owner may make or repair the fence and recover of the corporation double the amount necessarily expended in making or repairing the same.  In an action against a railroad company for damages caused by the depasturing of plaintiff's land by cattle owing to the failure of the company to maintain a sufficient fence along its line of railroad against the plaintiff's land, it was contended that the statute provided the only remedy; but the contention was not sustained.  Referring to the general rule that where a new right is given by statute and a remedy provided for a violation thereof, such remedy is exclusive, the court held that it had no application to the case, and said: "If, in cases of that class, the remedy is, in its nature, coextensive with the injury, to which the party is exposed, the rule as stated would not be unreasonable.  But it is apparent here, that the remedy provided is not general, but limited to a single object, that of obtaining compensation for building the fence after notice.  It is in the nature of a provision to enable a party to anticipate and prevent the mischiefs that might result from neglect to build a fence; but it contains no provision whatever, for any adjustment of the damages which may have already resulted from neglect of duty.  *  *  *  *  *  It can surely be no answer to an action for an injury to a man's cattle, when, through the neglect of the railroad to fence, they have escaped upon the track and have been injured, that the statute has provided a different remedy for neglect to build the fence. The statute remedy applies to no case, where twenty days' notice has not been given to build the fence."  (Dean v. Sullivan Railroad Co., 22 N. H. 316.)

So where a statute authorized a land owner to "take up" cattle trespassing on his land, and hold them, subject to the

provisions of such statute, and it was contended in an action for the trespass that the plaintiff's only remedy was to institute proceedings under the statute against the cattle themselves and their owners, it was held that the statutory remedy by process *in rem* against the cattle themselves did not take away the remedy to recover damages from the owner of the cattle for wrongs done by them where they were not distrained *damage feasant*. (Trescony v. Brandenstein, 66 Cal. 514, 6 Pac. 384.) And under a statute authorizing a corporation building a plankroad to demand and receive toll according to specified rates, and to detain and prevent persons driving carriages through their gates until they shall have paid the tolls, it was held that the statute did not prescribe the exclusive remedy so as to prevent a recovery of the tolls in an action therefor. (The J. & S. Plankroad Co. v. Morley, 23 N. Y. 552.) It was early held in this state that the statutory provision allowing an appeal from the disallowance of a claim by a board of county commissioners did not prevent a claimant, after such disallowance, from bringing an ordinary action to recover the same, instead of appealing from the decision of the board. (Boswell v. County Commr's., 1 Wyo. 235.)

We are of the opinion that the court erred in declaring in the instruction aforesaid that a demand upon the water commissioner to distribute the water is the sole remedy and that because the plaintiff had not invoked that remedy he could not recover in the action. It clearly appearing that the verdict was directed and the case disposed of upon that ground, the judgment must be reversed, so far as it relates to the alleged causes of action for damages, and the case remanded for a new trial upon those causes of action. If, as we assume, the judgment was intended also to deny an injunction, it will not as to that matter be disturbed, since the evidence is not in the record.

*Reversed and remanded.*

BEARD, J., concurs.

SCOTT, J., did not participate in the decision.

ON PETITION FOR REHEARING.

POTTER, CHIEF JUSTICE.

This case is before the court at this time on a petition for rehearing. A candid and careful consideration of the able brief filed in support of the petition has not caused us to doubt the correctness of the decision, or convinced us that a rehearing ought to be granted. The only point made by the petition is that we erred in holding that the remedy provided by statute for securing a just and lawful distribution of the water of a stream through application to the water commissioner did not supersede and exclude the remedy of an action for damages for deprivation of the use of such water. Counsel courteously say in the brief that an examination of the opinion in the case has led them to conclude that they did not in the former brief and argument make clear in all respects their contention that the remedy of applying to the water commissioner to regulate the distribution of the water was exclusive of an action for damages; but that they are content if the court should feel, on re-examination of the subject, that it was clearly presented and fully understood upon the former hearing, insisting, however, that the question is one calling for the clearest possible exposition of the subject, and the most careful and comprehensive consideration of the origin, scope and purpose of the statutes, and the practical effect of the decision upon the future administration of the water laws, and the jurisdiction and functions of the courts.

We think that we appreciate to the fullest extent the importance of the question and the effect of the decision, though we do not entertain the view that the decision is in any way inconsistent with the scope or purpose of the statutes, or in disregard of their origin; nor that the effect of the decision will be to prevent, retard or embarrass the proper and effectual administration of the water laws.

We have again examined with care the cases decided under the Interstate Commerce Act, cited and strongly relied on by counsel, but remain of the opinion that they are not

in point, except as previously stated. To show the point decided in those cases a reference to the case of Texas Pacific Ry. Co. v. Abilene Cotton Oil Co., mentioned in the former opinion in this case (156 Pac. 1122, 1127) will, we think, be sufficient. It was held in that case that a shipper seeking reparation predicated upon the unreasonableness of the established rate must, under the act to regulate commerce, primarily invoke redress through the Interstate Commerce Commission, which body alone is vested with power to originally entertain proceedings for the alteration of an established schedule alleged to be unreasonable. The suit was brought to recover an alleged excessive amount exacted by the railway company on shipments of carloads of cotton seed, and it was alleged as ground for recovery that the rate charged was unjust and unreasonable. The court stated the fundamental question to be, "the scope and effect of the act to regulate commerce upon the right of a shipper to maintain an action at law against a common carrier to recover damages because of the exaction of an alleged unreasonable rate, although the rate collected and complained of was the rate stated in the schedule filed with the Interstate Commerce Commission and published according to the requirements of the act to regulate commerce, and which it was the duty of the carrier under the law to enforce as against shippers."

In the course of the opinion in that case the court conceded the principle to be settled that at common law, where, on the receipt of goods by a carrier, an exorbitant charge is stated, and the same is coercively exacted either in advance or at the completion of the service, an action may be maintained to recover the overcharge, and then stated that as the act to regulate commerce did not in so many words abrogate such right, the contention that the right was taken away by such act rests upon the proposition that the result was accomplished by implication; and that in testing the correctness of the proposition the court must be guided by the principle that repeals by implication are not favored, and

that a statute will not be construed as taking away a common law right, unless that result is imperatively required; "that is to say, unless it be found that the preexisting right is so repugnant to the statute that the survival of such right would in effect deprive the subsequent statute of its efficacy; in other words, render its provisions nugatory." The court then referred to the pertinent provisions of the act to regulate commerce and among others the provisions requiring only just and reasonable rates to be charged, that schedules of rates be established, published and filed with the Commission, and conferring upon the Commission power "to hear complaints concerning violations of the act, to investigate the same, and, if the complaints were well founded, to direct not only the making of reparation to the injured persons, but to order the carrier to desist from such violation in the future, and to compel compliance with the award of reparation by invoking the authority of the courts of the United States in the manner pointed out in the statute." Following that the court proceeded to demonstrate that if power was left in the courts to grant relief on complaint of any shipper, upon the theory that the established rate could be disregarded and be treated as unreasonable, without reference to previous action by the Commission in the premises the enforcement of the act would be impossible, because a conflict might arise between the decision of a court and the action of the Commission, since the established schedule might be found reasonable by the Commission in the first instance and unreasonable by the court acting originally.

In other later cases the Supreme Court of the United States has held that the Interstate Commerce Act did not supersede the jurisdiction of the courts, where the decision does not involve the determination of matters calling for the exercise of the administrative power and discretion of the Commission. For example, that if the carrier's rule, fair on its face, has been unequally applied and the suit is for damages, occasioned by its violation or discrimnatory enforcement, there is no administrative question involved,

the courts being called on to decide a mere question of fact as to whether the carrier has violated the rule to plaintiff's damage; and that such suits may be prosecuted either in the State or Federal courts. (Penna. R. Co. v. Puritan Coal Min. Co., 237 U. S. 121.) That, while reasonableness of rates and permissive discriminations based upon differences in conditions are administrative matters for the Commission, the courts may determine whether differentials in rates can be allowed for the same commodity under similar conditions of traffic, on account of differences in the disposition of the commodity. (Penna. R. Co. v. International Coal Min. Co., 230 U. S. 184.) That the state courts have jurisdiction in a case for damages against a carrier for failure to deliver cars in accordance with its own rules for distribution, where the rule itself is not attacked but discrimination against plaintiff notwithstanding the rule is the basis of the suit. (Ill. Cent. R. Co. v. Mulberry Hill Coal Co., 238 U. S. 275.) And in other courts jurisdiction is upheld where no question of the reasonableness of rates is involved. Thus, that the courts have jurisdiction, in a suit to recover back the difference between fixed charges collected at destination on an interstate freight shipment and the prepaid charge, to determine whether there was an overcharge under the rates as established and published. (Wolverine Brass Works v. Southern Pac. Co. (Mich.) 153 N. W. 778.)

Thus, in such cases, the right of action is denied where the claim is based upon the alleged unreasonableness of duly established and published rates filed with the Commission as required by law, for the reason that under the act to regulate commerce the power to determine whether the rate complained of is reasonable or unreasonable is conferred upon the Interstate Commerce Commission, with provisions for hearing and disposing of complaints as to that matter, and for awarding reparation to the injured person and enforcing the same, and that such power if disturbed by the exercise of conflicting jurisdiction by the courts would overthrow the design of the act to regulate commerce and render its

enforcement impossible. In other words, because of those considerations, the act is construed as abrogating the common law right of action in such cases. But, generally, where such reasons do not apply it is held that the jurisdiction of the courts is not superseded nor the right of action taken away. This we understand to be the effect of the decisions under the Interstate Commerce Act. We have not attempted to make the discussion of the question as arising under said act complete, for this is not a case depending upon a construction of that act. Our purpose has been only to show the underlying reason for the decisions in the cases relied on holding a right of action to have been abrogated, for such cases are important here only by way of analogy, and we think they do not sustain the contention made in the case at bar.

The duty of the water commissioner is not to award reparation to an appropriator injured through an excessive use of water by another from the common source of supply; nor is such a power conferred upon the commissioner, the division superintendent or the board of control, though the commissioner, when called upon to distribute the water of a stream and finding that an appropriator is then diverting more water than his adjudicated priority permits is authorized to reduce the amount of water diverted to that prescribed by the decree adjudicating the priorities on the stream by regulating the headgate. His action in doing that is not, however, conclusive upon the courts, nor is the only remedy for erroneous action on his part the appeal allowed by statute, but it is uniformly held, and we understand it to be conceded in this case, that an injunction will lie to restrain such erroneous action. No conflict of jurisdiction can arise with reference to the power and duty of the water commissioner by sustaining the jurisdiction of the court in an action for damages for a wrongful diversion of water by one appropriator to the injury of another; the existence of such a right of action cannot render impossible or hinder the performance of the duties imposed upon the commis-

sioner, or the exercise of the power conferred upon him, or the proper administration of the laws governing the use and distribution of the public waters subject to appropriation for beneficial uses. A wrongful diversion of water by one party to the injury of another who has a right to the water diverted might occur before an official distribution could be secured, and unless a right of action can be maintained for the damages caused by such wrongful diversion the injury would be irremediable. Whether, or how far, if at all, the failure by the injured party to request an official distribution of the water upon discovery of the wrongful diversion might be considered in mitigation of the damages subsequently accruing, or as evidence against the claim therefor, is a question not here for decision, as suggested in the former opinion.

It must be remembered that the water commissioner is not authorized to determine the question of priorities. In the discharge of his duties he is bound by existing decrees establishing the various priorities and the quantity of water to which each appropriator is entitled. The statute does not provide for continuous service of the commissioner in controlling every diversion and use of the water of the streams within his district. It is provided (Sec. 803, Comp. Stat. 1910), as an exception to the provision that water commissioners shall receive a stated per diem compensation for each day when actively employed in the duties of the office, that where the service may be improved by continuous employment and upon recommendation of the division superintendent, the commissioner shall receive pay at a stated monthly rate, to be paid by the county in which the work is performed as in the case of the per diem compensation. But unless the commissioner has assumed control of a headgate or controlling works of a diverting ditch or canal, as provided in Section 801, the water may be diverted by an appropriator for his own use, without first obtaining the permission of the commissioner or other water officer, subject, of course, in case of excessive diversion to the injury of

another, to the remedies provided by law for the redress or prevention of such injury. Thus it may happen that more water than an appropriator is entitled. to will be diverted by him to the injury of another having a better or superior right. And after a water commissioner has assumed control of the diversion of water into a particular ditch it may be physically possible, though in violation of the statute, for the owner to cause the diversion into such ditch of a greater quantity of water than that permitted by the commissioner, or authorized by the decree, to another's injury and damage. As suggested, that would be a violation of law for which the violator might be punished, but without the right to maintain an action for damages the injured party might be left without redress.

It is true that in a district where the commissioner is not employed throughout the irrigation season he is required to begin his work upon written demand therefor by one or more appropriators. Where he is employed by the month, it is required that he shall begin work and terminate his services as the superintendent of his water division may direct. And the superintendent may, under any condition, call upon the water commissioner for work within his district whenever the necessity therefor may in his judgment arise. (Comp. Stat., Sec. 805.) The right to call for an official distribution of the water of a stream in accordance with existing decrees is, of course, a remedy open to an appropriator claiming that water to the use of which he is entitled is being wrongfully diverted by another, for, no doubt, even in a district where the commissioner is employed throughout the irrigation season, the superintendent may be requested to direct a distribution by the commissioner, or the latter, we suppose, might have general instructions under which he could respond to a proper demand made upon him by an appropriator at any time. But we see nothing in the statutes, or in the scope or purpose thereof, making such remedy an exclusive one, taking away the right of action for damages caused by a wrongful diversion. It is a preventive remedy

merely; and yet the statute, as shown in the former opinion, seems to recognize the jurisdiction of the courts to prevent a wrongful diversion by injunction. It does not seem to us to have been intended as a substitute for an action for damages; and certainly it does not afford financial redress to one who has been injured by a wrongful diversion. And, as such right of action is not expressly taken away by the statute, we have perceived no good reason for holding that it has been impliedly abrogated.

In a case recently coming to our notice decided by the Supreme Court of Colorado, the effect of the statutory proceedings for establishing priorities to the use of water and the distribution thereof upon other remedies for injury occurring through a wrongful diversion is considered with reference to the particular facts in that case. It was not an action for damages but to enjoin certain ditch owners and water users from diverting the water from certain streams otherwise than in accordance with the decrees therefor. The water officials not having consented to become plaintiffs were made defendants. It appears to have been contended that no cause of action was stated for the reason that the plaintiffs had a plain, speedy and adequate remedy at law. Referring to that contention the court said:

"It is true an elaborate statutory method of establishing priorities to the use, and for the distribution of water thereunder, exists in this state, and that any water commissioner who fails to perform any of the duties imposed upon him by the statutes, and likewise any persons violating the water commissioner's orders, relative to the opening or shutting down of headgates, or the using of water for irrigation purposes, are severally guilty of criminal offenses. (Chapter 72, Rev. Stat. 1908.) However, these statutes do not afford a complete and adequate remedy for the injury and loss occasioned by taking water from the streams by a junior appropriator, when it is needed and demanded by a senior appropriator of the same stream within the same irrigation division. While the acts of a water officer in permitting the

water to be so taken by a junior appropriator, and the taking thereof by the latter against the order of the former, are crimes, for the commission of which the people may prosecute the respective violators of the law, the result, nevertheless, constitutes a special injury to the senior appropriator. Acts of such character may be enjoined by a court of equity. (People ex rel. v. Tool, 35 Colo. 225, 86 Pac. 224, 229, 231, 6 L. R. A. (N. S.) 822, 117 Am. St. Rep. 198.) An injury to private property is in its nature special and peculiar, and constitutes a private wrong, though the act causing the injury may also be a disturbance or obstruction to the public right. The right of all the people to have the laws of society observed in no sense limits or curtails the right of the individual to maintain a suit in equity to restrain the threatened injury, the commission of which would certainly result in a private wrong to him by injuring or depriving him of his property rights." (Rogers v. Nevada Canal Co. et al., 151 Pac. 923.)

A statute of Michigan provided that if any person or persons shall put any logs, timber or lumber into a lake, river or stream for the purpose of floating the same to the place of manufacture or market, without making adequate provisions for breaking jams of such logs, timber or lumber in the lake, river or stream, or for clearing the same from the banks thereof, or for running or driving the same, and shall thereby hinder the removal of logs, timber or lumber from the banks thereof, or obstruct the floating or navigation of the lake, river or stream, it shall be lawful for any other person engaged in floating or running logs, timber or lumber in such lake, river or stream so obstructed, to cause such jams to be broken, and such logs, timber or lumber to be run, driven or cleared from the banks of the lake, river or stream, at the cost and expense of the person or persons owning the logs, timber or lumber causing the obstruction; and that such owner shall be liable to such other person for such cost and expense, and that such other person shall have a lien on the logs, timber or lumber for the reasonable

charges and expense in breaking the jams or clearing the obstruction, and entitled to take and retain possession of the same or so much thereof as may be necessary to satisfy the amount of such charges and expense therein. The person claiming such lien was authorized by the statute to bring an action of assumpsit against the owner of the property to determine and satisfy the amount of the lien; and a proceeding was provided to ascertain and determine the amount of the lien if the owner of the property could not be ascertained or was without the jurisdiction of the court. That statute was held not to have the effect of abrogating the right of action at common law to recover the damages occasioned by obstructing a river or stream to the injury of another who was prevented by such obstruction from floating his logs, timber or lumber, where the defendant had not used any means to remove the obstruction. (Bellant v. Brown, 78 Mich. 294.) We doubt if a different rule would have been made or would have been proper if the statute had provided for removing the obstruction by a public officer at the expense of the person causing the obstruction or at public expense, for even in that event the person prevented from floating his logs, timber or lumber might be damaged without means of redress except an action at common law. In the case cited the court said that the fact that a statute had been passed giving a right of action different in form from that at the common law did not abrogate the right to proceed at common law, without some special provision of statute to that effect.

It is suggested in the brief in support of the petition for rehearing that the intention that an administrative remedy shall supersede a judicial remedy will be much more readily inferred than the intention to replace one judicial remedy with another where it is possible to reconcile the old with the new. We think the correctness of that proposition, at least for universal application, may be doubted. But if it should be accepted as a correct statement of the law we think there is no reasonable ground for the inference under

the statute considered in this case. We believe that we fully understood the contention of counsel at the former hearing. The question was ably presented and carefully considered. A rehearing will be denied.                    *Rehearing denied.*

BEARD, J., concurs.

SCOTT, J., did not participate in this decision.