, attorney for appellant.

, attorney for appellees.

---

## CRISMAN *v.* HEIDERER.

*(Supreme Court of Colorado—December Term, 1881—Appeal from the District Court of Arapahoe County.)* .

1. PLEADING AND CROSS-BILL—EQUITABLE RELIEF. A cross-bill will lie, if the subject matter thereof is germane to the matters set up in the original bill. It is not essential to the granting of equitable relief, that irreparable injury should already have resulted from the acts complained of; but only that the same is threatened or impending, and that a clear necessity be shown for immediate protection to some right or interest which would otherwise be seriously injured or impaired. And, to show this, the *facts* must be stated, and they may be set up in a cross-bill, and may be relieved against, as partaking of the nature of an original bill, seeking aid of the Court beyond the purposes of defense.

29

2. WATER RIGHTS. One having secured water privileges has the right to use and enjoy them; but he must do so in such manner as is reasonable, and so as to occasion as little damage as possible to the owners of adjacent premises—not arbitrarily and without regard to the results to others.

BECK, J. After careful examination of the voluminous record in this case, and a thorough review and consideration of the arguments of counsel, we have arrived at the conclusion that the decree of the Court below is in the main correct. One of its provisions require modification in order to conform to equitable principles, but we are satisfied that with this modification the decree entered will administer substantial justice to both parties to the controversy.

Counsel for the appellant argues at great length that the Court erred in overruling the demurrer to the cross-bill of the appellee, who was defendant below.

Two principal objections are urged against the cross-bill; one that the matters set up in it are not matters in question in the original bill; the other, that the relief sought is not equitable relief.

It is a sufficient answer to the first objection, that the subject matter of the cross-bill is germane to the matters set up in the original bill, which is all the law requires.

The original bill alleges in substance, that the defendant, Heiderer, had placed obstructions in the channel of the South Platte river, south of the Larimer street bridge, in the city of Denver, and in the vicinity of the mouth or head of complainant's mill ditch; that defendant was then engaged in constructing a permanent dam across the channel above and south of the bridge, for the purpose of wholly diverting the water from the western bank of the river where it was accustomed to flow when the ditch was made, towards the eastern bank, and that if the obstruction was completed, it would prevent the water from entering the complainant's ditch, and would deprive him of motive power to run his mill.

It alleges that the right of way for the ditch had been obtained by condemnation under the statute, and that the owners thereof were prior appropriators of the water, and entitled to have it flow into said ditch without obstruction. That the obstructions complained of were then sufficiently completed to stop the flow

of water in the channel of the river, and that the water was so diverted toward the eastern bank as to deprive the complainant of a sufficient quantity of water to operate his mill, and it had stopped running in consequence. It alleges that the mill, when supplied with water, was making about one hundred sacks of flour per day, and yielding a profit of about fifty dollars per day. That it had no other motive power to propel its machinery, and that, if the acts of the defendant were permitted, the value of the property would be destroyed. An injunction was prayed and that defendant be ordered to remove the obstructions.

The answer sets up that defendant is owner and in possession of a lot of ground and premises situate immediately south of Larimer street bridge, which, as described, extends from the center of the bridge on 'the south side, up the channel of the river a distance of 184 feet, and from this east line westward several feet beyond the western bank of the river. It avers that the right of way for the ditch was obtained only to a point thirty feet below or north of the bridge, where the head-gate was originally located, and that the water was appropriated at that point; denies any appropriation of the water at the point of diversion complained of south of the bridge, or that the right of way had ever been acquired to any point south of the bridge by condemnation or otherwise.

It then avers that, after the completion of the ditch, the complainant had unlawfully extended it up the western bank of the river, over the premises now owned by the defendant, to a point about 300 feet south of the bridge, and thereafter had received the water into the ditch at this point; that for the purpose of diverting the water into his ditch as unlawfully extended, complainant had placed dams and obstructions in the bed of the river upon and beyond the premises of the defendant, to a point 500 feet south of the bridge; that these dams and obstructions prevent the water from flowing in its natural channel towards the eastern bank of the river where it would otherwise flow, and where it did flow when the ditch was made, and divert it towards the western bank, which is unprotected and liable to overflow and damage.

The answer sets out at some length the facts concerning the liability of the river to annual floods or freshets, when it overflows its banks at and above defendant's premises, and threatens

to cut new channels beyond the western bank; describes the effect of the flood of May, 1876, at this point, the cutting away of the west bank of the river just above his premises in conse quence of these obstructions, and avers that if a similar freshet occur, the river will break through the western bank, and form a new channel through his property, thus producing great and lasting injury. The answer claims that the obstructions placed in the river by the defendant were merely to counteract, as far as he could, the effect of the dams, embankments, etc., constructed by the complainant, and to protect his property; that they turn the water eastward from the western bank into the channel where it was accustomed to flow when the Crisman ditch was constructed, leaving the water accessible to the ditch at the point where the complainant was and is entitled to receive it, viz.: at the Larimer street bridge.

The cross-bill sets out the same facts, avering the same danger from freshets in consequence of the obstructions placed in the channel of the stream by Crisman. It prays that Crisman may be decreed to remove "all of the dams, embankments and other obstructions of any kind whatever" placed by him south of the Larimer street bridge, and for other and further relief.

It is apparent, therefore, that the subject matter of the cross-bill is not foreign to the subject of the original bill. It is the same subject matter, but the cross-bill goes further, and, like the answer, states additional facts relating to the controversy, for the purpose of justifying the conduct of the appellee, and to show a right to affirmative relief against the acts of the appellant. This is not only admissible, but in most if not in all cases, absolutely necessary to be done in drafting a cross-bill. It is not to be expected that matters of defense or matters entitling a defendant to affirmative relief, will be fully stated in the original bill. The limit of the requirement is that the allegations of the cross-bill shall grow out of and be connected with the subject matter of the original bill. *Hurd* v. *Case*, 32 Ills., 45.

The allegations respecting the extension of the ditch by Crisman are objected to as being new matter, and not in any manner referred to in the original bill. But that bill is drafted so as to claim a right to receive the water into the ditch above the bridge and in the vicinity of the obstructions therein complained of. It is, therefore, germane to the subject matter to show that the

right thus claimed is derived from an unauthorized extension of the ditch. It is equally proper to show, by the averments of the cross-bill, that for the purpose of diverting the water into the ditch as extended, the complainant had turned the current at that point out of its natural channel by dams and embankments; also to allege and show, by a statement of facts, that these acts exposed the property of Heiderer to great damage.

We think the cross-bill comes clearly within the rule and is not obnoxious to the first objection.

The next objection to the cross-bill is, that the relief sought is not equitable relief.

The authorities on this question hold that where affirmative relief is sought by a cross-bill, it is not to this extent a pure cross-bill, but partakes of the nature of an original bill·seeking further aid of the Court beyond the purposes of defense. The rule laid down is, that the affirmative relief sought must be equitable relief or the bill will be held bad on demurrer. Story's Eq. Pl., Sec. 398, 629; 2 Daniel's Ch. Pr., p. 1,549, note 3; *Tobey* v. *Foreman,* 79 Ills., 489.

It is observable that the case made by the cross-bill for affirmative relief, is very similar in character, to the case made by the original bill. The injuries complained of in both bills are trespasses, and similar relief is sought by both.

But it is objected that the cross-bill does not make out a case of irreparable injury.

It is not essential to the granting of equitable relief that irreparable injury shall already have resulted from the acts complained of. It is only required that the damage is threatening or impending, and that a clear necessity be shown for affording immediate protection to some right or interest which would otherwise be seriously injured or impaired. High. on Injunctions, Secs. 10, 13.

The mere allegation that irreparable injury will result unless protection is extended, is not sufficient, but facts must be stated, that the Court may see how and why it would result, and that the apprehensions of irreparable mischief are well founded. *Carlisle* v. *Stevenson,* 3 Md., Ch. Decisions, p. 505. *Waldron* v. *Marsh,* 5 Cal., 119.

The cross-bill comes within this rule, all of the facts upon which the appellee bases his fears of injury and damage being

set out in the bill. We have duly considered these facts and are of opinion that the fears of the appellee were well founded, and that the damage apprehended was of such a character as to warrant equitable interposition.

It is also objected that there is no averment in the cross-bill that appellee owned the premises now claimed by him, at the time of the extension of the ditch, and it is insisted that he was not injured thereby, and therefore is not entitled to relief on account thereof. The cross-bill does allege title and possession in the appellee at and before the filing of the original bill of complaint. It also alleges, as we have seen, that the extension of the ditch over this land was wholly without authority, and that no license or right of way has since been acquired therefor. The act of extension stands therefore as a trespass upon this property, and the land having subsequently been conveyed to the appellee, the appellant is in no position to claim an advantage from his trespasses. Besides the appellee having succeeded to the title, has a right, on the face of his bill, to have the obstructions which threaten the destruction of his estate removed.

For the reasons assigned we perceive no error in the overruling of the demurrer.

We now come to the objections to the decree of the Court below, which are in effect, that it was unauthorized, in so far as it gave relief to the appellee, and that it did not award adequate relief to the appellant.

The questions arising under these assignments of error will not be discussed *in extenso*, nor will we review, in this opinion, the great mass of testimony taken, and returned in the record, although the same has received thoughtful consideration. We will do little more than state the conclusions at which we have arrived.

The record satisfies us, as it did the Court below, that both parties have been in the wrong; the appellee, in placing obstructions in the bed of the river; the appellant, in extending the ditch over and beyond the property now owned by the appellee, and in making the permanent embankment in the channel which formed the east bank of the ditch, as extended. The appellant was also wrong in diverting the water toward the eastern bank of the river by a dam across the channel higher up the stream. No

authority or license is shown for these acts, and that they seriously imperilled the adjoining premises on the west bank of the river we have no doubt.

It does not appear that the ditch could not have been supplied with water in the vicinity of its head gate, below the bridge. The entire current of the river has continued to flow under this bridge, notwithstanding the changes which may have occurred in the course of the channel above by the deposit of sediment and other material caused by the floods referred to.

But if a sufficient quantity of water to drive the mill could not have been diverted into the ditch at this point without damage to adjoining property, the extension should have been made in a legal manner. This matter is now provided for and regulated by statute. Laws, 1881, p. 161.

The appellant had the right to enter the bed of the stream above his ditch, and to remove sediment or obstruction which may have changed or obstructed the course of the current, so as to prevent it from entering his ditch. The appropriation of the water at the point named carried with it an implied authority to do all that should become necessary to secure the benefit of the appropriation. To this extent the appropriator acquired an easement in the adjoining lands. But the right thus acquired is one which is held to the narrowest limits compatible with the enjoyment of the principal easement, which is the right to the use of the water. The most reasonable mode of effecting this object must be adopted; and it must be done in such a manner, as to occasion as little damage as possible to the owner of the adjoining premises. The necessity of obtaining water to run the mill did not justify the appellant in arbitrarily adopting a method which was calculated to greatly damage the property of others. It has been well said, that the necessity of one man's business is not to be made the standard of another man's rights. The great maxim of the law, " *Sic utere tuo ut alienum non laedas,*" applies with as much force to the enjoyment of water rights as to rights of any other description. Angell on Watercourses, Secs. 141, 142, 143, 163, and notes; *Prescott* v. *Williams*, 5 Met., 429.

The decree, therefore, in so far as it permits Crisman to enter the premises in the bed of the stream south of the Larimer street bridge, for the purpose of keeping the channel clear of sediment and other material, tending to divert it from supplying the ditch is correct.

It is correct likewise in ordering him to remove the dams and and other obstructions placed by him in the bed of the river south of the bridge. If these obstructions have been swept away by freshets, as suggested, of course this part of the decree is satisfied.

That portion of the decree, however, which affords affirmative relief to the appellee, is, we think, too broad. It enjoins the appellant from " making, constructing, or building any obstruction in the bed of the river, at, under, or south of the Larimer street bridge, which shall raise the waters of said river above their natural flow, either at low or high water, south of said Larimer street bridge and adjoining the lands of said defendant Heiderer, as described in his said cross-bill."

It is not certain that a sufficient quantity of water can be diverted into the ditch in the vicinity of its head-gate, without placing at this point some obstruction in the channel, as a wing-dam, for instance, which may have the effect to raise the waters above their natural height on or adjoining the premises of Heiderer. Such a rule is inequitable and would work hardship.

A portion of Heiderer's land is in the bed of the stream. It would be unreasonable to say that the water should not be raised upon this portion of his premises at low water, or that the volume along the bank should not be increased, if necessary, to get the water into the ditch and it could be done without damage to the appellee.

The controlling principle is, that the water shall be diverted in such a manner as not to damage or seriously endanger the lands of owners upon the margin or banks of the stream.

As to whether the ditch has been properly constructed, or constructed to the proper point upon the stream, where the water can be diverted into it without producing such mischief are questions of fact to be determined in each case as it may arise.

The provision in this decree should enjoin the appellant from making, constructing, or building any obstruction in the bed of the river in the vicinity of the head-gate of said mill ditch, as originally located, which shall damage or seriously endanger the lands and property of the defendant Heiderer.

As regards the appellee's title, it is not in dispute, nor is it an

issue in the case. No one is here claiming adversely to him. The cross-bill alleges title and possession, and the demurrer admits the allegations to be true. The appellant having elected to abide by his demurrer, the Court had jurisdiction to award affirmative relief upon the cross-bill. High. on Injunction, Secs. 461, 516.

The cause is remanded with instructions to the District Court, to modify the decree in conformity with this opinion.

The costs of the appeal will be taxed to the appellee.

*Cause remanded.*