511 P.2d 523 (1973)
Elmer J. HOFF and Elsie M. Hoff, Plaintiffs-Appellees,
v.
Fred EHRLICH, Defendant-Appellant.
No. 72-268.
Colorado Court of Appeals, Div. II.
April 24, 1973.
Rehearing Denied May 15, 1973.
*524 Miller, Ruyle, Steinmark & Shade, Alvin L. Steinmark, Greeley, for plaintiffs-appellees.
Woolf & Chrisman, Marvin B. Woolf, Boulder, for defendant-appellant.
Not Selected for Official Publication.
ENOCH, Judge.
Elmer J. and Elsie M. Hoff, plaintiffs-appellees, initiated this action to enjoin Fred Ehrlich, defendant-appellant, from interfering with the natural drainage of water from the Hoffs' land. Trial was to the court which entered judgment for the Hoffs. We affirm.
The Hoffs own a 320 acre farm located directly north of a county road. Ehrlich's farm is immediately south of that road and lower in elevation than the Hoffs' land. Although most of the Hoffs' farm is under irrigation, only about thirty acres drain toward Ehrlich's farm. While there is some conflict in the evidence as to when certain events occurred, it is clear that the natural and historic drainage of both irrigation and natural water is and has been from north to south across the county road and across Ehrlich's property, originally a dryland farm. The Hoffs have been irrigating since at least 1937.
In about 1962, after the county laid a culvert under the road, Ehrlich leveled the north part of his farm adjoining the county road and started irrigating this level portion. At the same time he built a dirt dike along his north property line adjoining the barrow pit of the county road and installed a ten-inch clay tile drain pipe under the dike. After this construction the water from the Hoffs' farm, which drained southerly, flowed first through the culvert under the county road, then easterly in the barrow pit along the south side of the county road, and then southerly through the ten-inch drain tile onto Ehrlich's land. Near the end of July of 1971, Ehrlich removed the ten-inch tile drain and replaced it with a 2¾ inch metal pipe with a turnoff valve. When the Hoffs irrigated in August, the newly installed smaller pipe could not adequately carry off the waste water which subsequently backed up and covered part of the Hoffs' land. The area affected by the backed up water was planted in corn which had matured by August beyond the point of being susceptible to water damage. Therefore, the Hoffs sustained *525 no crop loss in 1971, but the undisputed evidence was that, had the waste water backed up earlier in the growing season, damage to the young corn would have occurred.
The trial court found that the 2¾-inch pipe did not have sufficient capacity to handle the drainage from the county road right-of-way and that this new condition interfered with the drainage from the Hoffs' field. Further, it determined that the Hoffs had suffered and would continue to suffer irreparable damage to their fields if the waste waters were not permitted to drain as they had previously. The court ordered Ehrlich to remove the 2¾-inch pipe and to reinstall the ten-inch drain, and it enjoined Ehrlich from further interfering with the natural and historical drainage of water from the Hoffs' fields.
Ehrlich contends that he, as the servient landowner, is suffering damage from the Hoffs' waste waters and that, even assuming no increase in water flow, he is justified in acting to protect his farm by controlling the rate and quantity of water flow onto his farm. Ehrlich further asserts that if he wishes to take the risk of causing damage to the dominant landowner, he should be allowed to do so and not be enjoined from protecting his own crops. We do not agree with his contentions.
The owner of the dominant estate has a legal and natural easement or servitude in the lower or servient estate for the drainage of surface water flowing in its natural course and manner. City of Boulder v. Boulder & White Rock Ditch and Reservoir Co., 73 Colo. 426, 216 P. 553; 93 C.J.S. Waters § 114. When an interruption in the natural flow or passage of surface waters is caused by the servient owner to the detriment or injury of the estate of the dominant owner, the court should issue a mandatory injunction for the opening of the easement which has been blocked. City of Englewood v. Miller, 155 Colo. 47, 392 P.2d 591; 93 C.J.S. Waters § 128. The injunction imposed is not to prohibit Ehrlich from protecting his own crops. The servient landowner may take steps to protect his own land from damage by drainage of surface water, but he may not act to the extent that damage is caused thereby to the dominant landowner. See Wyman v. Jones, 123 Colo. 234, 228 P.2d 158.
Ehrlich alleges there was evidence that the Hoffs increased the quantity of the water flow and changed the historic use and that, therefore, he was entitled to act as he did to protect his property. Ehrlich contends that the trial court made no specific findings on this issue and that this court should either make such findings in favor of him or remand the case to the trial court for that purpose.
Neither alternative is necessary in the disposition of this case. It is implicit in the trial court's findings and conclusions that the court had determined that the Hoffs had neither increased nor changed the flow of water onto Ehrlich's land and the evidence supports this conclusion. Even had there actually been an increase in the amount of waste water flow, in order for the owner of the servient estate to be afforded a remedy, it must be evident that the water was sent down in a manner or quantity causing more harm than it formerly had done. Hankins v. Borland, 163 Colo. 575, 431 P.2d 1007. Such was not the case here.
Ehrlich's final contention is that a mandatory injunction is not proper when based on speculation and when there exists a plain and adequate remedy at law. Ehrlich's claim that the damages are speculative is supported only by the fact that the Hoffs' corn crop was not damaged in 1971. This overlooks the undisputed facts that (1) the action of Ehrlich did cause the water to back up onto the Hoffs' field, (2) the corn was not damaged in 1971 because it was matured, (3) it is reasonably certain that the corn crop that year would have been damaged if the flooding had occurred earlier in the corn's growth, and (4) during the next growing season and subsequent years, the fields reasonably would be *526 irrigated several times each season with the certainty that, if the water flow blockage remained, part of the Hoffs' fields would be flooded each time. The Hoffs are entitled to have the natural and waste water drain in its natural and historical flow, and they are not required, as Ehrlich contends, to bring suit after each irrigation to establish and recover damages. Our Supreme Court has expressed the principle directly applicable to the case at hand, as follows:
"An injunction is primarily a preventive remedy and protective in its character. It may issue to prevent further wrong, although no right has yet been violated. The true virtue of injunction is in the anticipation and prevention of injuries if probable and threatened." Wyman v. Jones, supra.

Judgment affirmed.
COYTE, and DWYER, JJ., concur.