## MARY R. LYONS *vs.* MARIANNE WALSH.

Second Judicial District, Norwich, April Term, 1917.

PRENTICE, C. J., RORABACK, WHEELER, SHUMWAY and CASE, Js.

Every owner of land is entitled to have his soil in its natural state supported by the adjoining land.

A landowner who removes his own soil supporting the higher land of an adjoining proprietor, and erects a retaining wall wholly on his neighbor's land, may or may not be guilty of a trespass, depending upon whether the invasion of the adjoining land was with his neighbor's consent or not; but in either event the obligation to maintain such wall does not run with the land of the lower proprietor, nor affect his successors in title. The result would have been different had the wall been erected by the lower proprietor upon his own land: then the obligation assumed would have become a charge upon that land, at least so far as the maintenance of the wall was necessary to preserve the rights of the upper proprietor.

Such a wall becomes as much a part of the realty upon which it stands as the earth had been which the wall replaced, and with the same incidents and burdens of ownership.

In the case at bar the retaining wall had been built long before either of the present owners had acquired their respective titles, and each sought to compel the other to rebuild and maintain the wall, parts of which had already fallen and injured the lower premises owned by the plaintiff. *Held* that while the plaintiff was entitled to recover for the damage already done to her land, irreparable injury was not so clearly disclosed by the record as to warrant the granting of a mandatory injunction to compel the defendant to restore the wall to its original condition.

Argued April 26th—decided July 6th, 1917.

SUIT for a mandatory injunction requiring the defendant to repair and rebuild a stone wall supporting her land adjoining and above that of the plaintiff, brought to and tried by the Court of Common Pleas in New London County, *Waller, J.;* facts found and judgment rendered for the defendant upon her counterclaim, and appeal by the plaintiff. *Error and cause remanded for the rendition of a judgment for the plaintiff for damages.*

The parties own adjoining city house lots on a street in Norwich running north and south. Both lots were originally in one tract, and in its natural condition the land sloped unbrokenly and at a steep pitch from the north. Long before either of the present owners acquired title to her lot, the then owner of the lower lot— who had purchased from the original owner of the tract—leveled a part of his land for building upon it, and in so doing excavated and removed the soil from this portion up to and along a section of his northern boundary line. This destroyed for a corresponding distance the natural lateral support of the adjoining land of the north lot, and to replace it he built into the bank a retaining wall ten feet high along this portion of the east and west line. This wall was set wholly upon the upper, or what is now the Walsh lot, and the dividing line of the two properties lies along its exposed southern face.

Some years afterward, in 1895, and after the defendant had become the owner of the north lot, a later owner of the south lot made another excavation in preparation for further building, and removed more soil up to the line as extended from the eastern end of the wall. This operation removed the lateral support of the Walsh land along the continued line, and in substitution for this support he extended the wall at the same height of ten feet still further along the line—

continuing it wholly on the Walsh land so that the dividing line of the two lots follows the southern face of the wall throughout its length. The height of the wall measures the depth of the excavations at the line, and no additional burden requiring more than the natural lateral support of the soil has ever been added to the Walsh lot.

The parties are ignorant of the circumstances under which the first section of the wall was placed on the Walsh lot, save that its purpose and the person erecting it were as already stated, and although the remaining part of the wall was built after the defendant had acquired her present ownership, the record is silent as to why this part of the wall was also placed wholly upon her land. No deed dealing with any of the property involved mentions the wall.

The plaintiff bought the south lot in 1913, and through neglect and the work of the elements, the wall has been disintegrating for several years, there being no evidence of any effort by any one to maintain it or keep it in repair. It is now out of plumb in parts, and stones from it have become loosened and dislodged, and have fallen upon the plaintiff's land. Damage to the plaintiff from this cause during the two years next before this action was brought amounts to $25. More trouble of this character is likely to occur, and the wall is in danger of further collapse unless it is strengthened or restored.

There was apparently no dispute between the parties as to these essential facts, and upon them the plaintiff claimed, by way of equitable relief, a mandatory injunction directing the proper repair or rebuilding of the wall by the defendant, and legal relief in damages for the injury already incurred.

The defendant, in pursuance of a counterclaim which rehearsed the more important of the facts and supple-

mented them with further allegations in the nature of assumed legal deductions from them, claimed a mandatory injunction compelling the restoration of the wall by the plaintiff to a condition of efficiency, or the furnishing of other adequate support for the defendant's land.

The trial court rendered judgment for the defendant for a mandatory injunction as prayed for, and for nominal damages, and the plaintiff's claim of error, alternatively stated in its several assignments upon the appeal, is based upon the court's holding that the duty of maintaining the wall rested upon the plaintiff, and in not holding that it rested upon the defendant.

*William H. Shields* and *William H. Shields, Jr.*, for the appellant (plaintiff).

*Jeremiah J. Desmond*, for the appellee (defendant).

CASE, J. When a former owner of the Lyons' land first disturbed its surface, he did so at the peril of answering in damages if his act should destroy the lateral support which was his neighbor's by natural right. The law as to that situation is universally settled. "The right of an owner of land to the support of the land adjoining is *jure naturæ*, like the right in a flowing stream. Every owner of land is entitled, as against his neighbor, to have the earth stand and the water flow in its natural condition." *Gilmore* v. *Driscoll*, 122 Mass. 199, 201; *Trowbridge* v. *True*, 52 Conn. 190; *Ceffarelli* v. *Landino*, 82 Conn. 126, 72 Atl. 564.

He apparently recognized this, and sought to forestall the probable result to the higher ground of the upper lot, by substituting an artificial support to safeguard it. In every effective sense he accomplished this purpose, but what he actually did was to take away a

portion of his neighbor's land and replace it with a solid stone wall. Whether he invaded the adjoining lot by mistake or with its owner's consent is of no consequence so far as his successors in title are concerned. It was in any event so done as to leave no charge upon his own land. The wall became as much a part of the realty upon which it was built as the earth had been which it replaced, and with the same incidents and burdens of ownership as attach to every part of the land on which it stands. *Ward* v. *Ives*, 91 Conn. 12, 21, 22, 98 Atl. 337.

The accepted law with relation to lateral support is, therefore, without direct significance here, and of only an incidental interest in its possible bearing upon the equities which the case discloses. Such right arising from it as the defendant's predecessors in title had in relation to the adjoining land, was by way of relief in damages once a wrongful invasion had been followed by an actual injury to the land. There is of course no natural right to equitable interference for the prevention of such an anticipated wrong,—though it may very well be that in cases presenting situations peculiar to themselves and disclosing the essential elements of irreparable injury a court of equity will interpose its aid. But the redress contemplated by the law is that which comes from an infringement of the right that works actual damage. The violator is then answerable for his tort whether he be the owner of the premises on which the initial mischief is committed, or the merest stranger to the title. *Gilmore* v. *Driscoll*, 122 Mass. 199, 208. The action is a purely personal one. The wrong which gives rise to it binds the land to nothing, charges the title with nothing.

But if the owner, in anticipation of such an injury arising out of his acts, sets an artificial structure on his own land to prevent it and to replace what he has

removed, he assumes an obligation which equity will recognize, and charges the land with its maintenance—so far, at least, as that maintenance is necessary to preserve his neighbor's rights.

The defendant seems to assume that in some way the situation presented here is controlled by this principle, and relies chiefly upon the earnestly urged unfairness of saddling the maintenance of the wall upon her, when it was confessedly erected by a former owner of the adjoining land to protect what later became hers from the consequences of his invasion. However persuasive her statement of the equities may appear in this limited view of the situation, the claim is not tenable. It ignores the entire absence of the link vitally necessary here to fasten any liability upon the plaintiff,—a burden upon the land itself which attaches to her as its owner. She is obviously only reachable through this, and it is not even seriously suggested that under the positive and well understood law of real property the land came to her charged with any duty to this wall. As to any supposable personal agreement by the builders of the wall to maintain it—if we were at liberty on the record before us to assume that such an agreement ever existed—there is no conceivable theory of law or equity which could transfer the obligations of such a personal undertaking to the plaintiff upon her mere acquirement of a title in no way affected by it.

But while these considerations are decisive of the case, it is apparent that something might be said for the plaintiff's equitable position here,—if there were occasion to treat the matter in that aspect. She succeeded to her present ownership as recently as 1913, and took the land as she found it. The wall was no part of her purchase, but was an open and visible part of the adjoining property. We may properly assume from the

facts found that it was then in an advancing condition of decay. Whatever the original purpose of its erection had been, it became after her ownership began a source of annoyance, if not a menace, to her occupation. Even had she taken title with knowledge that the structure had been voluntarily put there by some former owner of the land she was buying, to avoid a personal liability for a tort of his own, this could not weaken her position from the standpoint of equity. She was in no sense equitably, any more than legally, answerable for any act of her predecessor in title, to which she was not a party, and which did not result in a charge upon the land.

We are unable to sustain the judgment of the trial court charging the plaintiff, as it does, with the duty of maintaining the wall, but the finding is comprehensive enough to warrant a final disposition of the case without a retrial.

The plaintiff is entitled to recover for the damage already done to her land by falling parts of the wall, but as to her claim for equitable relief by way of a mandatory injunction directing the rebuilding or restoration of the wall to its original condition, we are not satisfied that irreparable injury is clearly enough disclosed to warrant the exercise of so drastic a power. Equitable relief of this character is, and for the most obvious reasons should be, granted only in situations which so clearly call for it as to make its refusal work real and serious hardship and injustice. The facts of the case before us hardly bring it within this requirement.

There is error, the judgment is reversed, and the cause is remanded with directions to the Court of Common Pleas to enter a judgment for the plaintiff to recover damages assessed at twenty-five dollars.

In this opinion the other judges concurred.