## CHARLESTON.

HENRY W. COLE v. SIGNAL KNOB COAL COMPANY

Submitted October 30, 1923.    Decided March 11, 1924.

1. MINES AND MINERALS—*Right of Surface Owner to Subjacent Support Includes Right to Use Soil for Agricultural Pursuits.*

    The right of the owner of surface of land to subjacent support includes the right to use the soil for the agricultural pursuit to which it may be adapted. (p. 704).

2. SAME—*Owner of Underlying Strata Liable to Owner of Surface for Injury to Horse Breaking Through Excavation.*

    Where a horse grazing on the surface of land falls into an opening caused by the excavation of underlying strata by the owner thereof, or breaks through into such excavation, and is killed or injured, the owner of such underlying strata is liable in damages to the owner of the surface and horse for such injuries if the owner has in no way contributed thereto. (p. 706).

3.   SAME—*Injuries to Live Stock Breaking Through Excavation by Owner of Underlying Strata Held Not Remote.*

  Damages for such injuries are the immediate and proximate result of the destruction of the surface support and are in no sense remote.   (p. 706).

  Error to Circuit Court, Fayette County.

  Action by Henry W. Cole against the Signal Knob Coal Company.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

  *Osenton & Lee,* for plaintiff in error.
  *Hubard & Bacon,* for defendant in error.

MILLER, JUDGE:

  This action was instituted to recover damages for the loss of plaintiff's horse, which died from injuries sustained by breaking through the surface of plaintiff's land and falling into defendant's coal mine. Plaintiff was the owner of an undivided interest in the surface of the land and had charge and control of the other undivided interests, and had used the land where the accident occurred for pasture, for the past twenty-five years. There had been a severance of the minerals and surface many years before.

  The declaration charges that it was the duty of defendant in removing the coal from its leasehold to leave sufficient pillars or supports to sustain the overlying surface occupied by plaintiff, so that the said surface would not crack, break or fall in, but that defendant negligently failed and refused to leave sufficient pillars and support for said surface, as a result whereof the injuries complained of occurred. The first count alleges that plaintiff's horse fell into an opening caused by a break in the surface; and the second, that the surface broke through while the horse was grazing thereon.

  There was a verdict and judgment for $200.00 in favor of plaintiff; and defendant has prosecuted this writ of error.

  Defendant contends, first, that there is no evidence of negligence on its part, and, second, that if it should be held to that high degree of care which would compel it to support the sur-

face absolutely in all places and under all circumstances, the measure of damages would be the dimunition in value of the surface, and that no recovery should be had for injury to other property, the damages sustained by plaintiff being too remote.

The evidence shows that in driving a twelve foot entry through its leasehold defendant's workmen came to a place where the dirt in the coal showed that they were near an outcrop on a steep hillside. The work of mining and removing coal was discontinued here. A miner working at this particular point testified that he placed one prop three feet from the face of the coal nearest to the outcrop, and that some four, five or six feet back of this prop there were plenty of props in place. The fall or cave-in occurred at the face of the wall where the work of mining was discontinued, whether in the center or at one side of the prop does not appear. The evidence shows that the hole in which the horse was found, was about four feet in diameter at the top and twelve feet at the bottom. No witness could say whether the horse broke through the surface, or whether it fell into a hole caused by the breaking of the surface. Plaintiff testified that three days before the accident there was no break in the surface of the ground, and that he had not seen the horse for twenty-four hours before he found it there in a dying condition.

It is well settled in this state, as elsewhere generally, that the owner of land has an absolute right of support for his surface, unless such right has been waived. *Griffin* v. *Fairmont Coal Co.*, 59 W. Va. 480; *Hall* v. *Harvey Coal & Coke Co.*, 89 W. Va. 52, *Godfrey* v. *Weyanoke Coal Co.*, 82 W. Va. 665. There is no evidence of waiver here. Defendant takes the position that the rule above stated applies to the surface of the soil only, and that while the land owner may maintain an action for injury to the surface, he may not do so for injury to other property following a subsidence of the surface. The question then presented is, what are the respective rights and duties of the owners of the two strata of the land?

The rule requiring surface support is an application of the doctrine, *sic utere tuo ut alienum non laedas,* the true legal

meaning of which is defined by Broom's Legal Maxims, p. 289, as; ''So use your own property as not to injure the rights of another.'' In lateral support cases this rule has been construed not to authorize the erection of buildings by the surface owner, for the reason that such added weight would increase the downward and lateral pressure and thus abridge the rights of the adjoining land owner. 3 Minor's Inst. (2nd. ed.) 26. But Mr. Minor and the English authorities say that such right may be acquired by prescription, and no doubt it may be acquired by grant. In this case what are the rights of plaintiff? Has he not the right to use his land for the natural purposes to which it is adapted? If he has only the bare right of support, his land would be of no use or benefit to him; he could not put it to any use without taking the risk of loss of any personal property he might find it necessary to place thereon over the excavation of the subjacent owner. If he must refrain from using the surface of the land, from placing on it any weight whatsoever, the right of the owner of subjacent strata would become the dominant right, the only right that could be exercised with reference to the land. Is the surface owner to be deprived of the use of his land for agricultural purposes, the use for which it is adapted by nature? If so, he could not cultivate the soil or pasture the land, or drive a wagon or other farm machinery over the excavation of the subjacent owner. Does not the rule of *sic utere tuo ut alienum non laedas* confine the owner of the subjacent strata to such use of his property as will not interfere with the use of the surface for all agricultural pursuits and purposes? We think it does. The use of land for agricultural purposes is a natural right, one which plaintiff in this case testified he had enjoyed for a period of twenty-five years. Was not defendant bound to take notice of such use? The work of mining and removing coal from the leasehold of defendant, a tract of 827.89 acres, began in 1907; but the evidence does not show when the excavation under the land owned by plaintiff began. We do not say that plaintiff may or may not have acquired by prescription right to have his land supported for the purpose of grazing his stock thereon; but we are of opinion that he had a natural right to have it

supported for carrying on thereon such agricultural pursuits as it may have been adapted to.

Besides, if we may apply the same rule to the use of land for agricultural purposes as for building purposes, the English and some American cases hold that in an action for injury by subsidence, if there are buildings on the land, the burden is on defendant to show that the subsidence was caused by their weight. *Wilms* v. *Jess,* 94 Ill. 464, 34 Am. Rep. 242; *Brown* v. *Robins,* 4 Hurl. & Nor. 185; *Hamer* v. *Knowles,* 6 *Id.* 459. Here there was no attempt to show that the weight of the horse caused the surface to fall through. And in some jurisdictions it has been held that recovery may be had for the value of fences and shrubbery attached to the surface, since, owing to their lightness, they can not be regarded as having caused the breaking of the soil. *Brown* v. *Robins,* 4 H. & N. 186; *Strowan* v. *Knowles,* 6 H. & N. 454; *Hunt* v. *Peake,* Johns. 705; *White* v. *Tebo,* 60 N. Y. Sup. 231. Contra, see *Thurston* v. *Hancock,* 12 Mass. 220.

Defendant contends that if it is liable to plaintiff for injury to his land, damages for loss of the horse are too remote, and are not the natural, ordinary or reasonable consequences of its conduct, and not such as could have reasonably been foreseen or anticipated. In *Walker* v. *Strosnider,* 67 W. Va. 39, 64, where plaintiff was a tenant in a building which fell due to the negligence of defendant in excavating on the adjoining premises, it was said: "Nor is any reason perceived why he should not be permitted to recover in addition to compensation for the loss of his term, be it great or small, consequential damages, resulting immediately and directly from the wrongful act done, such as those emanating from the loss of personal property on the premises. Such damages are in no sense remote and speculative. The injury is the direct, immediate and proximate result of the destruction of the premises. These views are fully sustained by authority." Sedgwick on Damages, (9th ed.) §927; Sutherland on Damages, (4th ed.) §§16-18; *Bass* v. *West,* 110 Ga. 698; *Austin* v. *Railroad Co.,* 25 N. Y. 334; *Gray* v. *Waterman,* 40 Ill. 522. The injuries complained of were the direct result of the failure of defendant to support the surface of plaintiff's pasture field, in viola-

tion of his rights, whether the horse fell into the opening or broke through the surface. There was no intervening cause; and plaintiff was not at fault. He knew nothing of the danger. He testified that only a few days before the accident there was no break on the ground where the horse· fell through.

We are of opinion to affirm the judgment.

*Affirmed.*