MAURICE E. MILLER et al., Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim No. 29417-A.)

Court of Claims, June 26, 1950.

*Jacob Welch* for claimants.

*Nathaniel L. Goldstein, Attorney-General* (*Arthur W. Mattson* and *Douglas S. Rider* of counsel), for defendant.

LOUNSBERRY, P. J. The claimants were the owners of premises in Addison, New York, fronting on the west side of Main Street and extending westerly to the bank of the Canisteo River. The front end of the premises was occupied by a business block while to the rear, separated from the block by a twenty-seven-foot alley, was a one-story cinder block building, 51.7 feet long and 22 feet wide, erected in 1931, to which had been added in 1939, at the westerly or river end of the premises, a one-story wooden structure, 22.8 feet long and 22 feet wide. The combined structure was rented to the Southern Tier News Company as a printing plant, and the wooden building housed a large printing press, resting on a concrete foundation.

In 1946, work was begun on the Addison Flood Control Project. This was a Federal project, under sections 701-701t, particularly sections 701a-1, 701b-2 and 701c, of chapter 15 of title 33 of the United States Code which requires the State to acquire the necessary lands, easements and rights of way, but vests jurisdiction over and prosecution of the project in the Department of the Army. In this case, the work was performed under a contract between the Federal Government and a private contractor, subject to the supervision of the army engineers. The particular project involved the construction of a flood wall along the Canisteo River, at the rear of claimants' and other premises.

In connection therewith the State of New York permanently appropriated a parcel of .008 acres lying along the river bank immediately to the rear of the wooden building, and also appropriated a temporary easement in the land occupied by the wooden building, comprising .011 acres.

On October 14, 1946, the contractor began driving sheet piling along a line close to the rear wall of the wooden building, using a power hammer. This operation caused considerable vibration. It may reasonably be concluded that subsequently excavation was performed along the river side of the piling for the purpose of erection of the flood wall, although the record is strangely devoid of evidence as to such excavation.

After the commencement of the pile driving, claimants observed a tendency of the wooden building to separate from the cinder block building and brought this fact to the attention of the contractor and of the United States engineer in charge. The contractor endeavored unsuccessfully to arrest the process. Subsequently, at unspecified times, cracking and subsidence, as great as three to five feet, of claimants' land inside, or to the building side, of the piling was observed. Similar cracking and subsidence of adjoining lands on which there were no structures was also observed. Substantial cracks appeared in the floor and walls of the cinder block building. The wooden building collapsed and the press was tipped over. In order that operations might continue, claimants replaced the wooden building with a cinder block structure at a cost of $1,600.

Claimants seek an award not only for the land appropriated but also for the damage to buildings. The State concedes that they are entitled to the value of the land and easement taken and the diminution in value of the remaining land, but contends that they cannot recover for the damage to the buildings, basing such

contention on the law as to lateral support and also on the fact that the State was not a party to the construction contract.

Since both this and the rather similar case of *Wolcott* v. *State of New York* (199 Misc. 229) which is decided simultaneously herewith, involve the application of the doctrine of lateral support, we deem it advisable to review generally the rules with respect thereto. No statute or ordinance with respect to the subject is applicable and therefore the common-law rules apply.

On the basis of the annotations in 50 American Law Reports 486 and 59 American Law Reports 1252, the sections on lateral support in 2 Corpus Juris Secundum, Adjoining Landowners, section 4-22, and the supporting New York cases hereinafter cited, we believe that those rules may be summarized as follows:

A landowner is absolutely entitled to the lateral support of his soil in its natural state by the soil of the adjoining lands. If an adjoining owner by excavation removes such support, causing the land to fall, he is responsible in damages, without regard to his degree of care, or to the fact that the work was performed by an independent contractor. (*Radcliff's Executors* v. *Mayor of Brooklyn*, 4 N. Y. 195; *Riley* v. *Continuous Rail Joint Co.*, 110 App. Div. 787, affd. 193 N. Y. 643; *Bergen* v. *Morton Amusement Co.*, 178 App. Div. 400.)

Such right of support does not extend, however, to structures placed on the land. Hence, subject to the limitations hereinafter stated, one who excavates on his own land is not liable for resulting damage to buildings on adjoining lands. The underlying principle is that one may not, by altering the natural condition of his land, deprive an adjoining owner of his right to use his land to the same extent as if the alterations had not been made. (*Dorrity* v. *Rapp*, 72 N. Y. 307, and the cases cited above.)

If, however, the weight of the structure did not materially increase the lateral pressure, and thus was not a cause of the subsidence of the land, the adjoining owner who excavates may remain liable, not only for the damage to the land, but the damage to the structure as well. (*Riley* v. *Continuous Rail Joint Co., supra.*)

Further, an excavating owner, while under no obligation to support adjoining structures, must give the adjoining owner adequate notice of his intentions, so that the latter may take steps to protect himself, and must use reasonable skill, care and prudence in the prosecution of the work to avoid any unnecessary damage to the adjoining structures, in default of which he is liable therefor. Examples of such want of care are excavating in too great lateral sections, or leaving an excavation open an

undue length of time. (*Austin* v. *Hudson River R. R. Co.*, 25 N. Y. 334; *Dorrity* v. *Rapp*, 72 N. Y. 307, *supra*; *Petillo* v. *Kennedy & Smith, Inc.*, 263 App. Div. 821.)

The owner is not liable for want of care, resulting in damage to an adjoining structure, on the part of an independent contractor, unless the owner fails to engage a competent contractor or interferes in the work, or the plan itself is defective and will result in unnecessary injury. (*Blake* v. *Ferris*, 5 N. Y. 48; *Berg* v. *Parsons*, 156 N. Y. 109; *Dorrity* v. *Rapp*, *supra*.)

In attempting to apply the foregoing principles to the present case, we are at once confronted with the peculiarity that the State, although the owner of the land on which the excavation took place, did not devise the plan, did not control, supervise or perform the work, and was not a party to the construction contract. Its relationship with the Federal Government, which actually fulfilled these various functions, does not fit neatly into any recognized category. The flood control statutes (U. S. Code, tit. 33, ch. 15, §§ 701–701t, and L. 1936, ch. 862, as amd.) provide generally an arrangement whereby the Federal Government establishes and constructs a flood control project, while the State supplies the necessary lands and easements, removes obstacles, and otherwise co-operates, and, upon completion of the project, takes over and maintains it. Such a co-operative plan may perhaps best be described as a joint venture. Both parties are principals within their respective spheres; certainly neither can realistically be deemed the agent of the other.

The result, we think, is that the State, as a participating principal in and beneficiary of the project remains subject to the obligations of an owner, with respect to lateral support, despite its limited control in the particular situation.

Our decision in *Midolla* v. *State of New York* (46 N. Y. S. 2d 345) which also involved a flood control project, is consistent with this conclusion. There the State appropriated a permanent easement in claimant's land, but not including any part of his building. In the course of the work the building was damaged. The State moved to dismiss any claim as to such damage on the ground that it was caused by the contractor. We held that the State not being a party to the contract, which was with the Federal Government, and having no control over the contractor, would not be liable for the contractor's acts unless at least the damage arose in the proper performance of the work. At the subsequent trial, the parties presented evidence only of the diminution in value of the property as a whole, taking into consideration essential alterations in the building necessitated

by the taking of the easement, but excluding all damage to the building attributable to the operations of the contractor, and an award was made accordingly. In substance, therefore, we found the State liable for damage resulting from the project, although outside the actual appropriation, but not for negligence of the independent contractor.

We are thus finally led to the conclusion that in the present case the State will not be liable for damage to a building on adjoining land, arising from the removal of lateral support in the course of the performance of a reasonable and proper plan of excavation, nor will it be liable if the damage arose through the negligence of an independent contractor. Liability can exist only if the weight of such building did not materially increase the lateral pressure and thus did not contribute to the subsidence of the land, or if the plan itself was defective in that it involved unnecessary risk of damage.

In the present case no evidence whatever appears to establish any negligence on the part of the contractor and there is no adequate evidence that the plan was defective. A construction engineer did testify that the driving of the piling and the subsequent excavation would have caused claimants' soil to settle whether or not there were structures thereon. The weight of his testimony is open to serious question, however. So far as the rather sketchy record shows, he had not examined the plans, did not know the soil conditions, and did not know the depth of excavation or how it was performed. We cannot find the plan defective on such evidence alone, and there is no other.

The burden of proof that the weight of the building did not materially increase the lateral pressure is on the claimants. (2 C. J. S., Adjoining Landowners, § 21, subd. [a].) The natural assumption would be to the contrary. (*White* v. *Nassau Trust Co.,* 168 N. Y. 149.) Here, the claimants produced testimony that adjoining vacant lands also settled, and an expert opinion that subsidence of claimants' land would have occurred irrespective of the presence of buildings thereon. We have already questioned the weight of such expert opinion, however, which does not appear to be supported by any specific facts, and we do not believe that the evidence concerning the adjoining land is sufficient to overcome the normal presumption with respect to the land where the buildings actually stood. The facts are quite different from those which existed in the case of *Riley* v. *Continuous Rail Joint Co.* (110 App. Div. 787, affd. 193 N. Y. 643, *supra*). We are therefore of the opinion that the claimants have failed to sustain the burden of proof.

The claimants do not contend that the vibration caused by the pile driving was the principal cause of the damage. Even if they did so contend, however, that fact alone would not entitle them to a recovery unless the vibration were the result of a defective plan, concerning which point there is no evidence. (*Booth* v. *Rome, Watertown & Ogdensburg Term. R. R. Co.,* 140 N. Y. 267.)

This is conclusive with respect to the cinder block building. We believe, however, that in this particular situation, there is a distinction as to the wooden building. This structure stood entirely on the parcel in which the State had appropriated a temporary easement. The true purpose of such appropriation is not set forth in the record but the easement itself states that it includes the right to construct, reconstruct, maintain and operate a work area, facilities of utilities, and appurtenances to all structures and includes the right to remove any material excavated, cut, razed or torn down from the area and to clear of structures, reserving to the owner, at his own risk, the right to use the property so far as such use does not interfere with the rights of the State. It thus appears that the State acquired broad rights with respect to the building and it would, of course, be liable for any damage thereto as a part of its general liability for the value of the easement taken. The building was in fact destroyed while subject to such easement through causes connected with the purposes for which it was taken, and we believe that in these circumstances, the State is responsible therefor, quite independently of considerations of lateral support.

The cost of replacement of said wooden building was the sum of $1,600. In addition the claimants' property has been diminished in value in the amount of $1,500. Therefore the claimants are entitled to damages against the State of New York in the sum of $3,100 with interest on $1,600 from the 12th day of April, 1948, to the 12th day of October, 1948, and from February 10, 1949, to the date of entry of judgment, and on $1,500 from the 28th day of February, 1947, to the 28th day of August, 1947, and from February 10, 1949, to the date of entry of judgment.

Findings in accordance with the above opinion may be submitted within fifteen days from the date hereof, otherwise this memorandum will be considered the decision herein.

Let judgment be entered accordingly.