## No. C-963

**James F. Gladin and Faye J. Gladin v. R. D. VonEngeln, individually and as General Partner of Interstate Eighth Street Company, a limited partnership, Interstate Eighth Street Company, a limited partnership, and The City of Colorado Springs, a municipal corporation**

(575 P.2d 418)

Decided March 6, 1978.

---

Cleveland and Wengler, Edward D. Cleveland, for petitioners.

Bennett and Wills, Matthew B. Wills, for respondents R. D. VonEngeln and Interstate Eighth Street Company.

Gordon D. Hinds, City Attorney; Horn, Anderson & Johnson, Gregory L. Johnson, for respondent City of Colorado Springs.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

This is an action for damages and for an injunction resulting from subsidence of real property of the plaintiffs, the Gladins. So far as is involved in this review, the defendants were R. D. Von Engeln, Interstate Eighth Street Company and the City of Colorado Springs. Von Engeln was the general partner in the limited partnership, Interstate Eighth Street Company, and under the facts of this case any liability of the individual is also that of the partnership and *vice versa.* We refer to them jointly as 8th Street Co.

The Gladins and 8th Street Co. owned adjoining real property, that of the Gladins being to the immediate south of that of the 8th Street Co. The north portion of the Gladin property and the south portion of the 8th Street Co. property sloped down to the north to Bear Creek, which creek bisected the 8th Street Co. property. In late 1970 the Gladins commenced construction of buildings upon their property. At about the same time the 8th Street Co., in order to make its property more usable, relocated the channel of Bear Creek further to the south, causing the slope of the 8th

Street Co. property immediately south of the new channel to be considerably steeper. During this grading process a portion of the regraded slope lying immediately east of the Gladin's property gave way.

The City had been negotiating with 8th Street Co. for a right-of-way for electrical transmission lines along the relocated creek channel. Instead of granting an easement, 8th Street Co. conveyed to the City the strip of land over which the lines would be located. This strip was adjacent to the Gladin property and encompassed the entire regraded slope and creek channel. City officials knew of the first slippage prior to the time the City accepted the deed. Thereafter, in May 1971, the City received an engineering report which stated that the regraded slope was dangerous to the Gladin's property. The City did nothing to correct the slope's instability. In 1973 there were further slippages with resultant damage to the improvements which the Gladins had constructed.

The jury found that the Gladins had total damages in the amount of $70,000. It found that 8th Street Co. had not been negligent, but rendered a verdict against it for damages predicated upon strict liability. It also found the City liable on the basis of negligence. It further rendered a verdict on the cross-claims of 8th Street Co. against the City for indemnification of all damages assessed against 8th Street Co. The trial court also issued an injunction, mandating 8th Street Co. and the City to restore lateral support to the plaintiff's land. It stayed this injunction pending appeal.

The Colorado Court of Appeals, 37 Colo. App. 447, 550 P.2d 352 (1976), reversed as to both verdicts on damages and, thus, the matter of indemnification became moot. We reverse the court of appeals and direct reinstatement of the judgments as to damages, but direct that the trial court enter judgment *n.o.v.* in favor of the City on the issue of indemnification. We uphold the trial court's issuance of the mandatory injunction.

I.

The trial court instructed the jury as to the elements under which the 8th Street Co. could be held strictly liable. In this connection, the jury was instructed that, before it could find 8th Street Co. strictly liable, it must find that the "weight of the buildings, artificial additions and fill did not materially increase the lateral pressure and thus was not a proximate cause of the damage to plaintiffs' property." The court further instructed the jury that there was legal presumption that the weight of buildings, artificial additions and fill on plaintiffs' land contributed to the subsidence, and that the burden of proof was upon the plaintiffs to overcome this presumption and to show that the weight of buildings, artificial additions and fill on plaintiffs' land did not materially contribute to the subsidences.

The court of appeals found *Colorado Fuel & Iron Corp. v. Salardino*, 125 Colo. 516, 245 P.2d 461 (1952), dispositive in its ruling that there cannot be strict liability for removal of support to land

containing man-made structures. In *Salardino* the trial court had instructed that C.F.&I. was strictly liable for damages both to the land in its natural state and to the improvements on the land. This court reversed. The opinion stated, "In order to recover for damages to a structure on the surface occasioned by the removal of lateral or subjacent support, the crux of the action is negligence."

■ Following the rule of *Restatement of Torts* § 817(2), we hold that the trial court's instructions on strict liability were correct, and to that extent we overrule *Salardino.*

■ *Salardino* did not rule concerning liability for unimproved land in its natural state which is damaged by removal of support. Rather, the effect of the holding was that if there were improvements on the land, strict liability could not be imposed. The application of strict liability should not be based upon whether the thing damaged is natural or artificial. Rather, the distinction must hinge upon whether an artificial condition created on the plaintiffs' land contributed to the injury, or whether the subsidence would have occurred even if the land had remained in its natural state. *Miller v. State*, 199 Misc. 237, 98 N.Y.S.2d 643 (1950); *Williams v. Southern Ry. Co.*, 396 S.W.2d 98 (Tenn. App. 1965); and *Klemme, The Enterprise Liability Theory of Torts*, 47 Colo. L. Rev. 153 (1976).

## II.

■ 8th Street Co. argues that, under the instructions given by the court, the evidence does not support the verdict against it. We find ample evidence in the record to support it.

## III.

The court of appeals held that liability could not be imposed upon the City solely for its failure to refurnish lateral support to the Gladin property, which support had been removed by the City's predecessor in title. In its opinion it cites *Frederick v. Burg*, 148 F. Supp. 673 (W.D. Pa. 1957); *Green v. Berge*, 105 Cal. 52, 38 P. 539 (1894); *Carrig v. Andrews*, 127 Conn. 403, 17 A.2d 520 (1941); *Lyons v. Walsh*, 92 Conn. 18, 101 A. 488 (1917); *Paul v. Bailey*, 109 Ga. App. 712, 137 S.E.2d 337 (1964); *Beal v. Reading Co.*, 370 Pa. 45, 87 A.2d 214 (1952); and *Restatement of Torts*, § 817(1) and Comment j § 817. It further concluded that *Moore v. Standard Paint & Glass Co.*, 145 Colo. 151, 358 P.2d 33 (1960) was distinguishable and not controlling. While some of these authorities support the opinion, in contrast, we regard *Moore* as controlling.

■ In *Moore* defendant's predecessor in title made an excavation upon its land. After defendant purchased the property, an unusually heavy rain flooded into the excavation and water seeped into the plaintiffs' adjoining building. The defendants contended that they could not be held liable in negligence because they had not created the condition on the land which resulted in plaintiffs' damage. This court rejected the contention

and stated:

"[The defendants were] under an affirmative duty not to permit [their] land to remain in an altered state if such altered state created a condition the natural and foreseeable result of which would result in injury to the adjoining property, and the breach of this duty constitutes actionable negligence."

In the instant case, the trial court instructed the jury:

"Where land has been altered from its natural state so as to create a condition which a reasonably prudent person would anticipate might result in injury to adjoining property, the owner of such altered land has a duty not to permit such condition to remain on his land, but to correct such dangerous condition at the earliest practicable opportunity. The owner of such altered land has such duty whether or not he initially created the condition or whether or not the condition was negligently created.

"The failure to perform such duty may constitute negligence on the part of owner of the land on which such condition exists."

Under *Moore* and under these instructions, there was no error in the verdict against the City for negligence.

■ *Restatement (Second) of Torts* § 366 is in accord. It reads:

"Artificial Conditions Existing When Possession is Taken.

"One who takes possession of land upon which there is an existing structure or other artificial condition unreasonably dangerous to persons or property outside of the land is subject to liability for physical harm caused to them by the condition after, but only after,

(a) the possessor knows or should know of the condition, and

(b) he knows or should know that it exists without the consent of those affected by it, and

(c) he has failed, after a reasonable opportunity, to make it safe or otherwise to protect such persons against it."

The City of Colorado Springs contends that sections 817-819 (in chapter 39) of the *Restatement of Torts* contain the principles for determining liability in all lateral support cases and that section 366, *Restatement (Second) of Torts*, is not applicable. We disagree with this argument. While sections 817-819 are intended to determine the liability of an actor who actually withdraws lateral support, they are not determinative as to successor liability. This is indicated by the scope note to chapter 39 which provides:

"The withdrawal of lateral support may subject the *actor* to absolute liability (§§817 and 818), or to liability for negligence (§819). Likewise, the withdrawal of subjacent support may subject the *actor* to absolute liability (§820), or to liability for negligence (§821). Although the general rules of the law of negligence have already been stated in volume II, they are specially applied in this Chapter to withdrawal of support, because it is desirable that the two types of liability for withdrawal of support be dealt

with in one place in order that the relations of the two may be apparent." (emphasis added)

With regard to withdrawal of lateral support, the purpose of chapter 39 is to compare absolute liability of an actor with negligence liability of an actor. Thus, there is no reason for sections 817-819 to deal with the liability of successors since it is clear that only an actor can be held absolutely liable. *Restatement of Torts* §817, Comment j (1939). The scope note to chapter 39 also states: "The Chapter states the liability of a person who withdraws the support . . . ."

Further evidence that sections 817-819 are not intended to determine the liability of successors is found in the scope note to topics 4 through 8 of chapter 13 of the *Restatement (Second) of Torts* (1965).

"Topics 4 to 8 in this Chapter do not state the rules which determine the liability for *invading* legally protected interests in the support of land, which are stated in Chapter 39 . . . ." (emphasis added)

Thus, chapter 39 would seem only to except the actual actor, the person who actually withdraws or *invades* the support, from the rules of sections 364-386. This, of course, coincides with the notion that chapter 39 is only intended to determine the liability of actors.

## IV.

The alleged indemnity by the City was predicated solely upon contract. Our review of the record does not show sufficient evidence to establish that a contract of indemnity was made. The trial court, therefore, should have directed a verdict in favor of the City on this issue.

## V.

Upon entry by the trial court of judgments under the jury's verdicts, the court issued a mandatory injunction against the 8th Street Co. and the City requiring them to restore the stability of plaintiff's land. The plaintiffs had asked the jury to award them damages for full value of the property on the theory that the cost of repairing the structural damage to the buildings plus the cost of restoring stability to the land would exceed the market value of plaintiffs' property, which was $107,000. Instead the jury awarded only $70,000 damage. It follows that, since 8th Street Co. and the City are liable for the subsidence and the verdicts did not allow damages for future subsidence, it was properly within the province of the court in equity to issue the mandatory injunction, affording protection against the occurrence of further damage. *Wyman v. Jones*, 123 Colo. 234, 228 P.2d 158 (1951); and *Crisman v. Heiderer*, 5 Colo. 589 (1881).

The cause is returned to the court of appeals for remand to the district court with directions that the judgments and injunction of the district court be reinstated, except that the district court be directed to enter judgment notwithstanding the verdict in favor of the City as to the cross-claims concerning indemnity.

MR. JUSTICE LEE and MR. JUSTICE CARRIGAN do not participate.