**Larry Eulis BREEDING and Mildred Shirlyne Breeding, Plaintiffs,**

**v.**

**KOCH CARBON, INC., Defendant.**

**Cuba Harmon BOSTIC and Dorothy Bostic, Plaintiffs,**

**v.**

**KOCH CARBON, INC., Defendant.**

**Civ. A. Nos. 88–0221–A, 88–0222–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Nov. 29, 1989.

Lawrence L. Moise, III, Abingdon, Va., for plaintiffs.

Linda Frith, Roanoke, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

This case is before the court on the defendant's motion for summary judgment. The court has jurisdiction over this case pursuant to 28 U.S.C. § 1332.

## FACTUAL BACKGROUND

Plaintiffs Cuba Harmon and Dorothy Bostic own the surface estate of two tracts of land in Buchanan County, Virginia. Plaintiffs Larry Eulis and Mildred Shirlyne Breeding are the owners of the surface estate of a tract of land also in Buchanan County. One of the plaintiffs' predecessors in title conveyed all of the mineral rights to the tracts of land in question to a predecessor in title of the defendant, Koch Carbon, Inc.

The defendant has conducted a mining operation in Buchanan County which has allegedly extended under the Bostic property and Breeding property. The mining has allegedly caused the loss of subjacent and lateral support for the plaintiffs' surface estates, resulting in damage to their property, including damage to a house and loss of a spring.

## INJURY TO BUILDINGS

Koch Carbon argues that any damages that the plaintiffs may be entitled to because of its violation of their right to subjacent support should not include damages for injury to the structural improvements on the land in the absence of a showing by the plaintiffs of negligence on its part.

■■■ A landowner who has parted with his mineral rights in a parcel of land possesses the common law right to have the surface supported in its "natural condition." *Clinchfield Coal Corp. v. Comp-*

*ton,* 148 Va. 437, 450, 139 S.E. 308, 312 (1927); *Couch v. Clinchfield Corp.,* 148 Va. 455, 460, 139 S.E. 314, 315 (1927). One who removes subjacent support for the surface and causes it to subside is strictly liable to the surface owner for the resulting injury to the surface. *See Stonegap Colliery Co. v. Hamilton,* 119 Va. 271, 89 S.E. 305 (1916).[1]

### I.

There is no reported Virginia case law discussing whether this liability extends to injuries to structural improvements on the surface. By a statute first adopted at the convention of May 1776, the common law of England is in full force in Virginia and, absent modification by the Virginia General Assembly, is to be the rule of decision. Va.Code Ann. § 1–10. Although decisions of the English courts made since the Revolution interpreting the common law are not controlling authority, *Livingston v. Jefferson,* 15 F.Cas. 660, 664 (C.C.Va. 1811); *Baring v. Reeder,* 11 Va. (1 Hen. & M) 154, 158 (1806), such decisions have been accorded great weight by the Virginia Supreme Court and have been cited as the sole authority for certain doctrines of the common law, *see Long v. Vlasic Food Products Co.,* 439 F.2d 229, 231 (4th Cir.1971) (citing *Foster v. Commonwealth,* 96 Va. 306, 31 S.E. 503 (1898)).

The Supreme Court of Virginia has accepted the holding in *Brown v. Robins,* 157 Eng.Rep. 809 (1859), a leading English case involving adjacent landowners, and thus the right to lateral rather than subjacent support, that a landowner may recover damages for injury to his buildings that resulted from subsidence caused by the adjacent landowner if the weight of the buildings did not contribute to the subsidence. *Stearns v. City of Richmond,* 88 Va. 992, 996, 14 S.E. 847, 848 (1892). Although the Court has observed that the right to subjacent support is closely related

---

**1.** Although the court nowhere explicitly states that it applied the standard of strict liability, it is apparent from the opinion that the court did apply it. American and English authorities are unanimous in holding that the presence or lack of negligence is irrelevant. *See e.g.,* 54 Am. Jur.2d *Mines and Minerals* § 200 (1971); *Humphries v. Brogden,* 116 Eng.Rep. 1048 (1850).

to the right of lateral support,[2] it has not yet recognized the holding in *Brown v. Robins* as applying to subjacent support situations.

A noted authority has asserted that the holding in *Brown v. Robins* does apply in the case of subjacent support. *See* H.G. Wood, A Practical Treatise on the Law of Nuisances § 201 (1st ed. 1875). Wood states that:

> The right to *subjacent* support for land, it is said, is only applicable to the land in its natural condition, unencumbered by buildings or other structures that sensibly increase the pressure thereon; but, as has previously been explained, the mere presence of a building or other structure upon the surface does not prevent a recovery for injuries to the surface, unless it is shown that the subsidence would not have occurred except for the presence of the buildings. When the injury would have resulted from the act if no buildings existed upon the surface, the act creating the subsidence is wrongful, and renders the owners of the mines liable for all damages that result therefrom, as well to the buildings as to the land itself.

*Id.* Wood cites only *Brown v. Robins* and two earlier English cases as the authority for that proposition. *Id.* at n. 2. One of those earlier cases, *Roberts v. Haines*, 6 E. & B. 643 (Q.B.1856), *aff'd*, *Haines v. Roberts*, 7 E. & B. 625 (Ex.Ch.1857), which was apparently relied upon by the court in *Brown v. Robins*, did involve subjacent support. In *Roberts*, after the jury found that "even without the weight of the houses, the ground would have given way by reason of the working [of the mines]," 6 E & B at 648, the judge told the jury that the plaintiff was entitled to damages to the extent of the injuries to all the houses. *Brown v. Robins*, 157 Eng.Rep. at 811 (this point was not reported in the *Roberts* opinion).

In 1915, the English Court of Appeal ruled, in a case before it, that the defendant was liable for all injuries suffered by a surface owner, including injuries to the house on the surface, which were caused by the defendant's removal of the subjacent support of the surface. *Manley v. Burn*, 2 K.B. 121 (C.A.1915). There was no mention of negligence. *Id.* In the case, the parties had "agreed that the subsidence was not caused by the weight of the building, which was so small that it might be disregarded." *Id.* at 123.

## II.

None of Virginia's sister states has recognized a negligence requirement as advocated by the defendant.[3] Although several states, unlike Virginia, have refused to accept the holding in *Brown v. Robins* and therefore still require a finding of negligence for recovery of damages for injury to buildings caused by a removal of lateral support for the surface in its "natural state," *see* 5 Powell on Real Property ¶ 701 (1968), it appears that no state has held that the negligence requirement applies to subjacent support situations, *see id.* at ¶ 703.

Four states follow the decision in the leading case of *Wilms v. Jess*, 94 Ill. 464 (1880), which quoted Section 201 of Wood's Treatise as authority for the holding that one who removes the subjacent support for the surface of a tract of land and thereby causes the surface to subside is strictly

---

**2.** "[T]he right to subjacent support, it is said, was first determined in *Humphries v. Brogden*, 12 Q.B. 739, 64 Eng.Com.Law R. 739, upon the ground that there were the same reasons for it that there were to maintain the right of lateral support which had been previously determined. Both rest on the same foundation." *Stevenson v. Wallace*, 68 Va. (27 Gratt.) 77, 87 (1876). *See also Marvin v. Brewster Iron Mining Co.*, 55 N.Y. 537, 557 (1874) (court held that "the subjacent owner may do beneath the surface what the adjacent owner may do beside it").

**3.** The only case cited by the defendant in support of its assertion that a finding of negligence should be required before one is liable for injury to buildings resulting from subsidence caused by his removal of subjacent support was *Colorado Fuel and Iron Corp. v. Salardino*, 125 Colo. 516, 245 P.2d 461 (1952). This case was specifically overruled on the very point in question by *Gladin v. Von Engeln*, 195 Colo. 88, 575 P.2d 418 (1978), which was also cited by the defendant.

liable for any injury to structures on the land where he has not proved that the subsidence would not have occurred if no structures had existed on the surface. *Id.* at 468–69.[4] The Arkansas Supreme Court and a California court, without citing *Wilms*, have also adopted that holding. *Paris Purity Coal Co. v. Pendergrass*, 193 Ark. 1031, 104 S.W.2d 455 (1937); *Marin Mun. Water Dist. v. Northwestern Pac. R.R.*, 253 Cal.App.2d 83, 61 Cal.Rptr. 520 (1967).

Three states, without raising the issue of whether the buildings contributed to the subsidence, have imposed strict liability for the injuries to the buildings caused by subsidence resulting from a loss of subjacent support.[5]

The Restatement (Second) of Torts adopts the *Wilms* view. *See* Restatement at § 820. The Restatement provides that one who withdraws subjacent support of another's land is strictly liable for subsidence only if the support withdrawn was necessary to support the land in its natural condition. *Id.* at § 820 comment c. If there are artificial additions on the land, he is strictly liable only if the subsidence would have occurred in the absence of those additions. *See id.* at § 820 comment b, illustration 1. However, if one is so liable, he is also liable for the harm to the artificial additions that results from the subsidence. *Id.* at § 820(2).

■ This court therefore determines that Virginia would adopt the position of the Restatement, the English courts, and the American courts which have specifically addressed the issue, that if one withdraws subjacent support for the land of another and subsidence results, if the subsidence would have occurred even in the absence of any artificial additions to the land, then he is strictly liable not only for the harm to the land caused by the subsidence, but also for any harm to the artificial additions on the land that results from the subsidence.[6]

### III.

■ The defendant proposes that, even if the position that this court has now adopted is Virginia law, the burden of proving that the subsidence would have occurred in the absence of the structural improvements should be on the surface owners, the plaintiffs in the instant case. No court of last resort of any state has recognized that proposition,[7] while the four that have followed *Wilms* and the Arkansas court have placed the burden on the defendant to prove that subsidence would not have occurred in the absence of structural improvements.[8] *Wilms* quoted from Wood's Treatise in support of its assertion that the burden is on the defendant. 94 Ill. at 468–69. However, the English cases cited by Wood in support of its proposition

---

**4.** *See Winnings v. Wilpen Coal Co.*, 134 W.Va. 387, 59 S.E.2d 655, 662 (1950) (citing *Cole v. Signal Knob Coal Co.*, 95 W.Va. 702, 122 S.E. 268 (1924), which in turn cited *Wilms*); *Ohio Collieries Co. v. Cocke*, 107 Ohio St. 238, 140 N.E. 356 (1923) (quoting *Wilms* with approval although it noted that because negligence had been found by the jury, it was unnecessary to adopt the complete holding of *Wilms*); *Jackson Hill Coal v. Bales*, 183 Ind. 276, 108 N.E. 962, 963 (1915) (citing *W. Ind. Coal Co. v. Brown*, 36 Ind.App. 44, 74 N.E. 1027 (1905), which in turn cited *Wilms*).

**5.** *Jones v. Wagner*, 16 Pa. 429 (1870); *Collins v. Gleason Coal Co.*, 140 Iowa 114, 115 N.W. 497 (1908); *Piedmont & George's Creek Coal v. Kearney*, 114 Md. 496, 79 Atl. 1013 (1911).

**6.** This court expresses no opinion as to whether the imposition of strict liability is limited solely to this situation.

**7.** The defendant cites only *Gladin v. Von Engeln*, 195 Colo. 88, 575 P.2d 418 (1978), in support of its proposition. The court in *Gladin* noted in its statement of facts that the trial court had instructed the jury that there was a legal presumption that the artificial additions contributed to the subsidence in question and that the burden of rebutting this presumption was on the plaintiff in order to hold the defendant strictly liable for injury to the artificial additions caused by subsidence. 575 P.2d at 420. The Colorado Supreme Court failed to discuss this issue in its opinion. No disposition of the issue was necessary because the jury had found the defendant in that case strictly liable and the Colorado Supreme Court was ordering the court of appeals to remand the case to the district court with instructions that the judgment for the plaintiff be reinstated.

**8.** *Supra* note 4; *Paris Purity*, 193 Ark. 1031, 104 S.W.2d 455.

do not make clear on which party the burden lies.[9]

The Restatement (Second) of Torts, although not discussing the burden of proof, places the burden on the defendant of introducing evidence that the land would not have subsided if there had been no artificial additions on it. Restatement at § 820 comment d. The rationale given for this is that the weight of the artificial additions is usually slight compared with the weight of the supported land, *id.;* thus, it is reasonable to presume that the additions did not contribute to the subsidence, in the absence of evidence to the contrary. The Restatement notes that it is difficult to produce such evidence and the defendant is usually unable to do so. *Id.*

Although none of the English cases cited support the Restatement position, but are silent on this issue, this court finds the Restatement position consistent with the American cases cited and its rationale persuasive. Therefore, it determines Virginia would place at least the burden of coming forward with the evidence on the one who is asserting that subsidence would not have occurred in the absence of artificial additions.[10] Because the defendant in the instant case has submitted no evidence on this issue, it may not prevail on summary judgment on the basis of this issue.

## LIABILITY FOR LOSS OF PERCOLATING WATER

■ The defendant asserts that it is liable for the loss of the plaintiffs' water only if it is proven to be negligent or reckless in the use of that water.[11] The defendant alleges that no evidence has been offered by the plaintiffs demonstrating negligence or recklessness on the defendant's part and therefore the defendant is entitled to summary judgment on the issue of liability for the plaintiffs' loss of water.

The Virginia Supreme Court, in dicta contained in the case of *Clinchfield Corp. v. Compton,* 148 Va. 437, 450, 139 S.E. 308, 312 (1927), set out its position regarding the liability of one who causes the loss of percolating water of a surface owner by removing the subjacent support of the surface as follows:

But it does not follow that because the water was percolating, there could be no liability on the coal company. Liability is dependent upon the location of the point of interception of the supply. If the percolating water was on the land of the plaintiff and was there cut off by the removal of the subjacent support, to which the plaintiff was entitled, then the coal company is liable. Whether the surface is reserved by the grantor of the underlying coal, or is granted to one and the underlying coal to another, in either event the owner of the surface is entitled to subjacent support from the owner of the coal. 'Surface' includes whatever of earth, soil, land, or waters which lies above and is superincumbent upon the coal, and is not limited to the mere geometrical superficies. This is just what was decided ... in *Stonegap Colliery Co. v. Hamilton....* If the water had been cut off by the removal of the support underlying the plaintiff's surface, the coal company would have been liable....

Although it was dicta, it clearly stated the Virginia Supreme Court's position on that issue at that time. It also appears to be the settled American rule. *See* 55 A.L.R. 1385, 1427 (1928); 109 A.L.R. 395, 406 (1937). There is nothing to indicate that the court would now depart from that position. Therefore, if the defendant caused the loss of the plaintiffs' percolating water by removing the subjacent support of the surface of their land, it is strictly liable for the loss.

**9.** *See Brown v. Robins,* 157 Eng.Rep. 809; *Roberts v. Haines,* 6 E. & B. 643; *Jeffries v. Williams,* 5 Exch. 791 (1850).

**10.** The court is not required at this time to decide who would have the burden of persuasion on this issue.

**11.** Both plaintiffs and defendant agree to characterize the plaintiffs' water in question as percolating water, for the purpose of this motion for summary judgment.

## WAIVER

■ The defendant argues that, in any case, it is not liable for any injuries to the plaintiffs' properties caused by subsidence resulting from a loss of subjacent and lateral support because the plaintiffs' predecessors in interest waived their rights to subjacent and lateral support in the deeds. The severance deed in question contains the following language:

> ... [d]o grant bargain sell and convey ... all the coal iron salt petroleum and other ores and minerals lying and being in upon and under ... tract of land ... together with the right of entry and of making openings to mines right of way for roads for any sort in, upon, under or passing through and beyond the said tract of land and all the usual and necessary mining privileges including the necessary timber for mining, road making and railroad from this said land ...

This court has recently determined that Virginia would give effect to a surface owner's waiver of his right to subjacent support if that right is waived in the deed by clear and unequivocal language. *Ball v. Island Creek Coal Co.*, 722 F.Supp. 1370, 1372 (W.D.Va.1989) (citing *Stonegap Colliery Co. v. Hamilton*, 119 Va. 271, 292, 89 S.E. 305, 311 (1916)). The deed in question in *Stonegap* contained the following language:

> But there is excepted and reserved from the operation of this conveyance all the coal in, under and upon said tract of land, and the right and privileges of the said parties of the first part, their heirs and assigns to enter upon said tract of land and excavate and mine, prepare for market and remove said coal with all the usual mining privileges....

119 Va. 271, 280, 89 S.E. 305, 308.

The court in *Stonegap* rejected the argument that such language constituted a waiver of the surface owner's right to subjacent support. 119 Va. 271, 89 S.E. 305. Granting "all" of the coal along with the "usual mining privileges" does not constitute a waiver. *Id.* A case cited by the defendant in support of its waiver argument, *Kuhn v. Fairmont Coal Co.*, 179 F.

191 (4th Cir.1910), based its holding on *Griffin v. Fairmont Coal Co.*, 59 W.Va. 480, 53 S.E. 24 (1905). *Stonegap* strongly disapproved of *Griffin* because of its explicit rejection of the nearly unanimous position of English and American courts on this point of common law. 119 Va. at 287–8, 89 S.E. at 310–11.

Because the language of the deed in the instant case corresponds so closely the language of the deed in *Stonegap*, in regard to words of possible waiver, this court concludes that the severance deed in the instant case did not constitute a waiver of the surface owner's right to subjacent support.

## CONCLUSION

The deed severing the surface estate of the plaintiffs from the mineral estate does not contain a waiver of the surface owner's common law right of subjacent support. Therefore, the defendant is strictly liable, and the plaintiffs are entitled to damages, for all injuries, including loss of percolating water and injury to surface structures, resulting from subsidence caused by the loss of subjacent support resulting from the defendant's mining activities underneath the plaintiffs' lands, if such subsidence would have occurred even in the absence of the additional weight of the structures. However, the defendant has the burden of producing evidence showing that the subsidence would not have occurred in the absence of the additional weight of the structures.

The plaintiffs have submitted evidence that the defendant's mining has caused a loss of subjacent support resulting in physical injury to the plaintiffs' properties. *See* Bartlett Affidavit. The defendant offered no evidence that the subsidence would not have taken place in the absence of the additional weight of the structures. Thus, the defendant has failed to demonstrate that it is entitled to judgment as a matter of law. Therefore, the defendant's motion for summary judgment is denied.